IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| *IN RE:* | § **05 CA 11881 PBS** | |
| | § | |
| THE MATTER OF | § | REMOVED FROM THE |
| | § | MASSACHUSETTS TRIAL |
| PERRY LEE WHATLEY | § | COURT DOCKET NO. 05-P-20 |

### DEFENDANTS' ORIGINAL ANSWER AND COUNTERCLAIM

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendants PERRY LEE WHATLEY and DAWN JOHNSON WHATLEY hereby app ,

answer, and, for complaint against SOUTHWEST BOSTON SENIOR SERVICES, INC., w  1

show as follows:

### I. JURISDICTION AND VENUE

Removal jurisdiction has been properly invoked pursuant to 28 U.S.C. § 1446 (a), 28 U.S

§ 1443 (1) (2), 42 U.S.C. § 1983, and 28 U.S.C. § 1332.  The Original Counterclaim rests on

U.S.C. § 1983.

Venue is proper in the District of Massachusetts.

### II. PARTIES

The Parties to the proceeding are as follows:

Plaintiff, SOUTHWEST BOSTON SENIOR SERVICES, INC., "SWBSSI," is a contrac

to the Commonwealth of Massachusetts acting under color of state law. "SWBSSI" is represent

by O'SULLIVAN & ASSOCIATES P.C., Mr. James M. O'Sullivan Esq., 17 Accord Park Drive, Su

104, Norwell MA 02061; telephone: (781) 982-1700, telecopier: (781)871-4884.

Defendant/Counterclaimant PERRY LEE WHATLEY is a citizen of the State of Texa

temporarily residing in Boston for medical treatment.  He is represented by Mr. Ken Shulman, Es

LAW OFFICE OF KEN SHULMAN, Ten Winthrop Square, Boston, MA 02110; telephone: (617) 1-0100, telecopier: (617) 426-5251.

Defendant/Counterclaimant DAWN JOHNSON WHATLEY is the spouse of Deferɪt Perry Lee Whatley. She is represented by Mr. Daniel J. Shea, Esq., DANIEL J. SHEA, P.C., 8 West Bell Street, Houston, TX 77019-4814; telephone: (713) 942-7500, telecopier: (713) 942-7ʼ.

### III. ANSWER

1. Defendants admit paragraph 1 of the removed petition.

2. Defendants deny in its entirety paragraph 3 (C) of the removed petition and admi ᴇ remainder.

3. Defendants admit paragraph 4 of the removed petition.

4. Defendant denies paragraph 5 of the removed petition.

5. Defendants deny in their entirety paragraphs 6, 7, 8, and 9 of the removed petit

### IV. DEFENDANTS' ORIGINAL COUNTERCLAIM

6. Defendants/Counterclaimants PERRY LEE WHATLEY and DAWN JOHNS WHATLEY, hereinafter "the Whatleys," bring this Original Counterclaim against Petitio SWBSSI, predicated on 42 U.S.C. §1983 and would show the Court as follows:

#### Background Facts

7. On April 15, 2005, Texas residents Jeanie Anderson and Robert Daniel Whatley, nephew and niece of the proposed ward, only after discovering that their uncle had a sizable esta and in the company of their counsel, filed with the Texas State Court a petition to have their un placed in Guardianship.[1] Prior to this act of "concern," neither the niece or nephew paid mu

---

[1] In Massachusetts, they would have no standing, hence they used Harris County, Texas a the Commonwealth to do their bidding making their actions "under color of state law."

-3-

attention to the proposed ward, did not take care of him, and their attention was limited to *le minimus* contact.

8.  On January 7, 2005, the proposed ward married Dawn Johnson in Harris Cou[nty], Texas. Indeed, the brunt of the niece and nephew's petition appears to be that they were not in[vited] to the wedding. Nowhere do the niece or nephew even remotely assert or allege that the marr[iage] was a sham, or that the proposed ward was incapacitated at the time of the marriage. Thus, the C[our]t must presume that the ward has his wife caring for him and that the Texas guardianship applica[tion] is nothing more than the product of greed which the law does not and cannot allow.[2] There has b[een] absolutely no allegation, much less a showing, that any fraud took place in the marriage or that [the] proposed ward was incapacitated at anytime during that period.

### Relevant Law

9.  Long ago, in 1888, the United States Supreme Court characterized marriage as "[the] most important relation in life," and as "the foundation of the family and of society, without wh[ich] there would be neither civilization nor progress." *Maynard v. Hill*, 125 U.S. 190, 205, 211 (188[8]). In 1923, the Court recognized that the right "to marry, establish a home and bring up children i[s a] central part of the liberty protected by *the Due Process Clause."  Meyer v. Nebraska*, 262 U.S. 3[90,] 399 (1923)(emphasis added). The Court, again speaking to the issue stated [that] its past decisio[ns] make clear that the right to marry is of fundamental importance. *See Loving v. Virginia*, 388 U[.S.] 1 (1967). The Court's language on the latter point bears repeating, "The freedom to marry has lo[ng] been recognized as one of the vital personal rights essential to the orderly pursuit of happiness [by] free men. Marriage is one of the 'basic civil rights of man,' fundamental to our very existence a[nd]

---

[2] In fact, SWBSSI judicially admits that "Dawn Whatley is the Elder's caregiver as that ter[m] is defined by G. L. ch. 19A, §14." Pet. at par. 4.

-3-

survival." *Id.* at 12, *quoting Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 541 (1 ). Although *Loving* arose in the context of racial discrimination, prior and subsequent decisions c e Court confirm that the right to marry is of fundamental importance for all individuals. An n *Skinner* itself, marriage was described as "fundamental to the very existence and survival o e race." *Id.* at 541.

10.     More recently, in 1967, the Supreme Court, *referring to the Fourteenth Amendm.* , stated, "[w]hile this Court has not attempted to define with exactness the liberty thus guaranteed the Fourteenth Amendment], the term has received much consideration and some of the inclu l things have been definitely stated. Without doubt, it denotes not merely freedom from bo restraint but also [for example,] *the right to marry*, establish a home and bring up children." *Me v. Nebraska,* 262 U.S. 390, 399 (1967)(emphasis added). Since 1967, the Court has also held the right to marry the person of one's choosing is a core fundamental right that the States ou clearly not interfere with.

### The Instant Case

11.     *Stare decisis* notwithstanding, the Commonwealth, acting through SWBSSI, l nevertheless interposed itself between a lawfully wedded husband and wife and managed to convir a Massachusetts state court to enjoin a *res* that is outside that Court's jurisdiction and to enjoin N Whatley from receiving vital medical treatment as directed by his physician, Dr. Joseph Agris. l contrivance, false statements, and using the arm of the State, the Texas niece and nephew ha interfered with the most basic fundamental rights of the Whatleys. In that regard, annexed here as Exhibit "A" and duly incorporated herein by reference is the *Affidavit of Dr. Joseph Agris, M* Whatley's treating physician, as to why the Whatelys, of their own free will, decided to follow h advice and come to Boston for medical treatment on September 13, 2005. More importantly, r

-4-

Texas Court had at the time entered any orders prohibiting Mr. or Mrs. Whatley from traveli[ng] [o]r from seeking medical care in another state. In fact, because of the on-going, in-hospital me[dica]l treatment referenced in the affidavit of Dr. Agris, *supra*, Mr. Whatley has *never been served* [with] the Texas temporary guardianship application – it being against policy of The Methodist Hos[pita]l to let process servers run amok in the DeBakey Heart Institute.

12. Thus, the foregoing actions of the Defendant constitute a violation of the Civil Ri[ght]s of the Whatleys by the use of the State Court mechanisms – begun and put in process by H[arri]s County, Texas through its officials, and now extending to the Massachusetts State Officials h[ere]. This constitutionally impermissible conduct deprives both Mr. and Mrs. Whatley due process of l[aw,] life, liberty and the freedom to do with their lives as they please for which they now sue SWB[SSI] for damages in excess of $75,000.00 plus their exemplary damages, costs and attorney's fees.

### V. INJUNCTIVE RELIEF

13. On September 14th 2005 the Whatleys learned for the first time that the Harris Cou[nty] Attorney's office had filed an *ex-parte* petition and forwarded it on to SWBSSI to frauduler[tly] invoke the jurisdiction of the State Court.[3] The *ex-parte* order dated September 13th 2005, expi[res] by its terms today September 16th 2005, and cannot be renewed except by this Honorable Court, *a[nd] this Court only*. Thus, the Whatleys would ask to be heard before any further deprivational actio[ns] are taken against them, and would ask this Court to Order that since exclusive jurisdiction now ve[sts] with this Court, no more process be served on them without leave of this Court, and that they [be] allowed to continue the medical treatment ordered by the attending physician, Dr. Agris, the on[ly] person qualified to render an expert opinion. Finally, they request that they then be allowed [to] peacefully return to Texas.

---

[3] The *ex-parte* petition is replete with lies and will be dealt with accordingly in due cours[e.]

## VI. REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Defendants/Counterclaimants pray that on trial of this cause the Court enter judgment that SWBSSI take nothing by virtue of its claims, that the case against the Whatleys be dismissed with prejudice, and that on the counter-claim the Whatleys be awarded their actual damages, court costs, and attorney's fees, as well as a permanent injunction forbidding SWBSSI from renewing any petition in the State Courts against them in connection with their temporary residency in Massachusetts and corresponding medical treatment as this Court now has exclusive jurisdiction under 28 U.S.C. § 1332, and 42 U.S.C. § 1983.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| PERRY LEE WHATLEY, | DAWN JOHNSON WHATLEY, |
| By: /s/ Ken Shulman w/exp. perm. | By: /s/ Daniel J. Shea |
| KEN SHULMAN | DANIEL J. SHEA |
| Mass. B.B.O. # 460420 | Mass. B.B.O. # 652896 |
| LAW OFFICE OF KEN SHULMAN | DANIEL J. SHEA, P.C. |
| Ten Winthrop Square | 1928 West Bell Street |
| Boston, MA 02110-0000 | Houston, TX 77019-4814 |
| (617) 351-0100 | (713) 942-7500 |
| (617) 426-5251 Telecopier | (713) 942-7507 Telecopier |

### CERTIFICATE OF SERVICE

This is to certify that the above and foregoing *Defendants' Original Answer and Counterclaims* was served pursuant to FED. R. CIV. P. 5 on the 16th day of September 2005 to the individuals and in the manner indicated below:

Mr. James M. O'Sullivan                                    Hand Delivery
O'SULLIVAN & ASSOCIATES, P.C.
17 Accord Park Drive, Suite 104
Norwell, MA 02061-0000
ATTORNEY FOR SOUTHWEST
BOSTON SENIOR SERVICES, INC.

/s/ Daniel J. Shea
DANIEL J. SHEA

NO. 355.095

| | | |
|---|---|---|
| IN RE: THE PERSON AND ESTATE | § | IN THE PROBATE COURT OF |
| | § | |
| OF PERRY LEE WHATLEY, | § | HARRIS COUNTY, TEXAS |
| | § | |
| A PROPOSED WARD. | § | COURT NUMBER (2) TWO |

## AFFIDAVIT OF JOSEPH AGRIS, DDS, MD, FACS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared JOSEPH AGRIS, DDS, MD, FACS, known to me to be the person whose signature appears below and who, being by me duly sworn, did depose as follows:

"My name is Joseph Agris. I am a physician licensed to practice in the State of Texas. I hold degrees in both dentistry and medicine. I am board certified by the American Board of Medical Specialties (ABMS) as a Plastic and Reconstructive Surgeon and I am a Fellow of the American College of Surgeons. I am a clinical assistant professor at and teach medical residents from the Baylor College of Medicine at the Texas Medical Center in Houston. I am one of several treating physicians of Perry Lee Whatley and in addition, I am his medical case manager. I have first-hand knowledge of the facts hereinafter set forth, either through direct participation in his case or through consultation with my colleagues and review of his medical records. The facts and opinions hereinafter set forth are true and correct.

"In early July 2005, I was retained by my patient's wife, Dawn Johnson Whatley, as both a treating physician and overall case manager. By way of background, when I took over this case, Mr. Whatley had fallen approximately one year earlier from lack of balance that, in reasonable medical probability, was caused by blockage of his carotid arteries that supply blood to his brain. He had been previously treated at a hospital in Baytown, Texas and significantly, he was told that his carotid artery blockages were inoperable. Thus, Mrs. Whatley came to me, among other reasons, for a second opinion on the operability of the carotid arteries since she had heard of (and I confirmed) new, state-of-the-art graft techniques.

"My first decision was to bring the case to the DeBakey Heart Institute and vascular surgeon Dr. George Noon who is a cardiovascular surgeon of first-rank, world-class repute. After appropriate imaging and other studies, the team determined that Mr. Whatley's carotid blockages were surgically accessible and that his overall physical condition would allow surgery to be performed on him. Mr. Whatley, himself, consented to these surgeries, approximately ten days apart. I personally assisted in the first of these surgeries and my residents in the second. Both were successful and Mr. Whatley has complete blood flow on both sides.

"Before these surgeries, the records show that Mr. Whatley suffered some mental lassitude as a result of the decreased blood flow. This lassitude was ameliorated with oxygen. Significantly, after the carotid surgeries, oxygen administration was and is no longer necessary and Mr. Whatley demonstrates mental faculties appropriate to a man his age who has, for almost a year, been quite ill.

EXH "A"

"After the carotid surgeries, Mr. Whatley consented to a third surgery in which removed from his right neck a nodular basal cell carcinoma in the operating room. Patholc report shows the margins free from tumor and reconstruction of the neck was successful. T prognosis on this matter is excellent with a six month followup with me.

"Having completed the carotid and neck surgeries, we next turned our attention to N Whatley's need for post-surgical recovery, then physical rehabilitation of the year old I fracture -- within his physical and age limitations and also, within the restrictions associated wi his status as a Type II diabetic. Not surprisingly, Mr. Whatley's post-carotid improvemer resulted in increased physical activity that caused a blister to develop on his right heel. Initiall he was seen for this at a satellite hospital. However, at that time, Dr. Garber, a first rai endocrinologist I wanted to attend to the diabetic problems that hamper full rehabilitation, w not taking any new patients. Further, in-hospital admissions at the Texas Medical Center Houston are severely restricted due to the impact of Hurricane Katrina. Consequently, recommended that Mr. Whatley be admitted to Deaconess Beth Israel Hospital in Bostc because of its affiliation with the world renowned Joslin Diabetes Clinic. On Monday evenin September 12, 2005, I was finally able to communicate with Dr. Feinbloom at Beth Israel and I agreed to accept Mr. Whatley immediately as a direct admit. Since I had participated in M Whatley's surgeries, observed and treated him under anesthesia, and have been his cas manager, I was able to certify him as fit to travel and I instructed Mrs. Whatley to take hir immediately to Boston. I understand that the satellite hospital in Channelview from which F was taken, Triumph Hospital, required a seventy-two hour advance notice to effect an inter hospital transfer. Since I had independently certified Mr. Whatley as fit to travel by air withou restriction, Mrs. Whatley removed him immediately from Triumph Hospital supposedly 'agains medical advice.' That assertion will be seen to be in error. The intent here was not for an inter hospital transfer, but instead, a discharge from Triumph and direct admit to Beth Israel.

"In my medical opinion, with my first-hand knowledge of Mr. Whatley's overall medica condition, it was in his best interest that his wife, Dawn Johnson Whatley, follow my medica advice to move him immediately by air to Deaconess Beth Israel Hospital in Boston because o its affiliation with the world renowned Joslin Diabetes Clinic."

AFFIANT SAYS NOTHING FURTHER.

_____
JOSEPH AGRIS, DDS, MD, FACS

SUBSCRIBED AND SWORN TO BY JOSEPH AGRIS, DDS, MD, FACS this 15th day of September, 2005, to certify which, witness below my hand and seal of office.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

SEAL: