IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| *IN RE:* § | | NO. 05-CA-11881-PBS |
| § | | |
| THE MATTER OF § | | REMOVED FROM THE |
| § | | MASSACHUSETTS TRIAL |
| PERRY LEE WHATLEY § | | COURT DOCKET NO. 05-P-20( |

**DEFENDANTS' EMERGENCY APPLICATION FOR**

**TEMPORARY RESTRAINING ORDER, *EX-PARTE***

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants PERRY LEE WHATLEY and DAWN JOHNSON WHATLEY hereby appl  r an emergency, *ex-parte Temporary Restraining Order* pending a hearing on a preliminary injunc  1 and in support they would show as follows:

I. JURISDICTION AND PROCEDURAL AUTHORITY

1.  Removal jurisdiction has been properly invoked pursuant to 28 U.S.C. § 1446 , 28 U.S.C. § 1443 (1) (2), 42 U.S.C. § 1983, and 28 U.S.C. § 1332. The *Original Counterclaim* r  ; on 42 U.S.C. § 1983. Thus, exclusive jurisdiction over the persons of Perry Lee and Dawn John Whatley vests exclusively with this Court.

2.  This motion is made pursuant to the provisions of FED. R. CIV. P. 65 for wh purpose Defendants herein adopt and incorporate by reference as if set forth verbatim the fact allegations in their *Answer and Counterclaim* filed in this Court on September 16th 2005.

II. THE ACTIONS OF THE STATE COURT

3.  On September 16th 2005, after filing a *Notice of Removal* in this Court, coun properly served and filed a certified copy of the federal *Notice of Removal* on the Parties and State Court under cover of a state court *Notice of Removal*. The state court *Notice of Remo*

makes explicit reference to Justice Breyer's forceful opinion in *Sweeney v. Resolution* st *Corporation*, 16 F.3d.1, (1st Cir. 1994). A file-stamped copy of the state court *Notice of Ren* *al* is attached hereto as Exhibit "A" and incorporated herein by reference as if set forth verbatim

4.  Notwithstanding the proper filing in state court with actual notice to the State C rt Judge, she then called the case and indicated she would proceed. Thus, undersigned cou ;l immediately and on the record made explicit reference to the *Sweeney* citation in the state c t *Notice of Removal* and advised the State Court Judge that she was absolutely without subject m r jurisdiction. Incredibly, the State Court Judge announced that she would "ignore" *Sweeney* and t counsel could "appeal it if you want to." In that regard, *see Affidavit of Daniel J. Shea*, attac 1 hereto as Exhibit "B" and incorporated herein by reference as if set forth verbatim.

5.  Ignoring *Sweeney* and the mandates of 28 U.S.C. 1446 (d), the State Court Judge ι ι entered a temporary order, void *ab initio*, which purports to allow the forceful imprisonment l eventual seizing of the person of Perry Lee Whately. The offending *Temporary Order* is attac l hereto as Exhibit "C" and incorporated herein by reference as if set forth verbatim.

6.  Of onerous constitutional proportions is the language of the Order that seeks to l this Court as a secondary or ancillary court to Probate Court 2 in Houston, Texas to effect forcible extradition of a free citizen against his wishes and arguably, against the advice of attending physicians.

7.  Notwithstanding the violation of the constitutionally protected freedoms of Perry l Whatley, the offending Temporary Order is an *immediate and dangerous intrusion into physician-patient relationship for which he has no adequate remedy at law*. In that regard, *Affidavit of Joseph Agris, DDS, MD, FACS* was admitted into evidence in the impermissible st court hearing and reviewed by the State Court Judge who ignored its implications. It is attached

affidavit is attached hereto as Exhibit "D" and adopted and incorporated herein by reference as set forth verbatim.

### III. THE AFFRONT TO THE UNITED STATES CONSTITUTION

8. The order of the State Court, while being void *ab-initio* under *Sweeney*, is significantly an affront to Art. VI, Sec. 2 of the United States Constitution and to the authority, sovereignty, and dignity of this Court. The law could be no clearer and the disobedience to bolder by the parties involved and by the State Judicial system.

### IV. THE RUSE

9. On September 14th 2005, counsel learned for the first time that Judge Mike W, Probate Court No. 2, Harris County, Texas had signed an *ex-parte* Order at the behest of his attorneys purporting to place Perry Lee Whately in the custody of Harris County, Texas. The O expired by operation of law on the 16th of September 2005 and was never executed as Mr. Wha was in Boston receiving medical treatment. On even date, the Harris County Attorney's off acting through one Valerie Millholland, contacted SWBSSI and put into motion the instant peti that was removed by the Defendants. Therefore, the petition filed by SWBSSI was a ruse evidenced by the actions of SWBSSI's counsel James O' Sullivan to effectuate service of Te Court process on Perry Lee Whatley *after* the jurisdiction of this Court had attached.[1] Inde annexed hereto as Exhibit "E" and duly incorporated herein by reference is the "thank you no written by Houston Attorney, Roy L. Fuller, thanking O' Sullivan for assuring that Mr. What

---

[1] This service, engineered by O'Sullivan, is void *ab-initio* as well since the Texas Judge v under recusal and could enter no Orders, and all the Orders signed by the Texas Judge while recusal is pending are void. *See Brosseau v. Ranzau,* 911 S.W.2d.890, 892 (Tex. App.--Beaum 1995, no writ); *Metzger v. Sebek,* 892 S.W.2d. 20, 49,(Tex. App.--Houston [1st Dist] writ denie *Greenberg, Benson, Fisk & Felder v. Howell,* 685 S.W.2d.694, 695 (Tex. App.--Dallas 1984, o proceeding); *Dunn v. Street,* 938 S.W.2d 33, 35 (Tex 1997); and *Mercer v. Driver,* 923 S.W.2d 6 658 (Tex. App.--Houston [1st Dist] orig. proceeding).

would be served while hospitalized. Fuller represents the niece and nephew of Mr. Whately, prte litigants, who used the services of SWBSSI to accomplish by unlawful means that which thw would not allow.² These actions by the Texas lawyers, and an officer of this court are uly atrocious in that the Whatleys' constitutionally protected rights have been assaulted by the usee Commonwealth's state Court processes and by SWBSSI and its counsel. Mr. O'Sullivan waso furnished a copy of *Sweeney v. RTC, supra*, yet, like the Trial Judge, proceeded in the statert hearing contrary to *Sweeney's* mandate despite his sworn duties as an officer of this court ans oath under Art. VI, Sec. 2. Thus, at the time of the hearing in state court on September 16, 20t 2:00 p.m., no court in the United States possessed jurisdiction over the person and body of Perrye Whately except this Court. See *Order* of the State Court Judge, annexed hereto as Exhibit "C"d duly incorporated herein by reference, *supra*. Among other things, it explicitly acknowledgese 28 U.S.C. 1446 (d) removal by naming this Court and placing it in position to be an Ancillary Ct to a Texas Probate Judge -- an order which no Massachusetts state court judge could make sincee Texas state court lacked subject matter jurisdiction and *in personam* jurisdiction as well.

### V. THE EMERGENCY NATURE OF THE APPLICATION

10.     Counsel has observed at the state court hearing on September 16, 2005 that Da Whately, Mr. Roy Fuller's client, is now in Boston Massachusetts, and has apparently com forcibly remove Mr. Whately from the jurisdiction of this Honorable Court when another void s court order is entered either by the State Court Judge here, or the State Court Judge in Houst Texas! Daniel Whately, acting at the direction of both Roy Fuller and James O'Sullivan, seek

---

² Mr. O'Sullivan secured the *ex-parte* Order keeping Whatley in the Hospital so that Ful could get him served. The ruse used by O'Sullivan was that Mr. Whately was suffering "el abuse," a fact belied by the medical treatment being given to him at DeBakey Heart Institute Beth Israel - Deaconess as set forth in the Affidavit of Dr. Agris, Exhibit "D," *supra*.

-4-

whisk Perry Lee Whatley away before this Court can reach the merits of this action, thus depr[iving] this Court of its lawful Art. III jurisdiction befor it can hear and determine the case before it. [The] actions of the state court, which are void as a matter of law, speak legions as to why this Court [must] act quickly to protect the Whatleys as well as its own lawfully acquired jurisdiction. Mr. Wh[atley] is not a fugitive from justice, is not wanted in Texas, has never been served with valid [Process], and more importantly, has never been ordered by any Court to appear anywhere.

11. The Whatleys will suffer a tremendous and egregious harm for which they hav[e no] adequate remedy at law if these actions are not immediately restrained. This Court's Ar[t. III] jurisdiction will be defeated as well in that by removing Perry Lee Whatley from the jurisdictic[n of] this Court, it will deprive him of the rights secured to him under the First and Fourte[enth] Amendments to the United States Constitution which are cognizable in this Art. III Court[. In] addition, there has been no credible evidence of "elder abuse" and in this Court, FED. R. CIV. P[. 11] is a powerful instrument to any written document that is filed as a ruse or in opposition to [this] application. Its acknowledgment here also underscores the seriousness of counsels' signat[ure] below.

## VI. AUTHORITY TO ENJOIN

12. It has long been a settled principle that federal courts may enjoin unconstitutic[nal] action by state officials. *Ex parte Young,* 209 U.S. 123, 155-156 (1908). Here, and as reaffir[med] by the United States Supreme Court, no judicial officer can command the extradition of a citi[zen;] it is an executive act and function, and the executive branch has made no such demand to [the] Commonwealth that would trigger a State Court Judge to act in violation of Art VI. Sec 2, anc[ 28] U.S.C. § 1446(d). Accordingly, this Court has the authority to enjoin any state official fr[om] interfering with its jurisdiction, and by judicial fiat, anyone acting in concert and scheme with s[uch]

state officials.

13. In *Puerto Rico v. Branstad*, 107 S. Ct. 2802, 483 U.S. 219 (U.S. 1987), the U[nited] States Supreme Court held that only with a Governor's warrant, properly executed by [both] sovereigns, can a fugitive from one jurisdiction be forcibly removed to demanding a state.[3] A[s] Perry Lee Whatley is not a fugitive from justice, there is no Governor's warrant served upo[n the] Commonwealth, and this Court's Art. III jurisdiction has been properly invoked. Thus, this C[ourt,] and this Court only, can determine this issue which, by the actions and the ruse of Messrs. Fu[ller,] O'Sullivan, and others, has created a constitutional crisis of the first order.

14. Perry Lee and Dawn Johnson Whatley's rights to travel, stay, reside in another s[tate,] and invoke the jurisdiction of this Court are being threatened by judicial tyranny and la[w]y[er] contrivance. In *Saenz v. Roe*, 526 U.S. 489, 119 S. Ct. 1518, 143 L. Ed.2d 689 (U.S.1999), [the] United States Supreme Court again reaffirmed that the right to travel embraces three diffe[rent] components: the right to enter and leave another State; the right to be treated as a welcome vis[itor] while temporarily present in another State; and, for those travelers who elect to become perma[nent] residents, the right to be treated like other citizens of that State. In *Saenz*, the Supreme Court [also] held that the right of newly arrived citizens to the same privileges and immunities enjoyed by o[ther]

---

[3] *See* Extradition Clause and the Extradition Act. "Whenever the executive authority of [a] State or Territory demands any person as a fugitive from justice, of the executive authority of [a] State, District or Territory to which such person has fled, and produces a copy of an indictment fo[und] or an affidavit made before a magistrate of any State or Territory, charging the person deman[ded] with having committed treason, felony, or other crime, certified as authentic by the governor or ch[ief] magistrate of the State or Territory from whence the person so charged has fled, the execut[ive] authority of the State, District or Territory to which such person has fled shall cause him to [be] arrested and secured, and notify the executive authority making such demand, or the agent of s[uch] authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such ag[ent] when he shall appear. If no such agent appears within thirty days from the time of the arres[t, the] prisoner may be discharged." 18 U.S.C. § 3182. The statute has remained substantially unchang[ed] since its original enactment in the Extradition Act of 1793, 1 Stat. 302. *See also* 18 U.S.C. § 6[62] (1940 ed.); Rev. Stat. § 5278.

-6-

citizens of their new State, i.e, the third aspect of the right to travel, is protected by the new arr[i]'s status as both a state citizen and a United States citizen, and it is plainly identified in the Fourt[eent]h Amendment's Privileges or Immunities Clause; see *Slaughter-House Cases*, 16 Wall. 36, 80. [Th]e Court further held that newly arrived citizens have both state and federal rights -- rights whic[h th]e Whatleys have by coming into this Court, which adds special force to their claim that they hav[e th]e same rights as others who share their citizenship. Thus, since the right to travel embraces a citi[zen]'s right to be treated equally in her or his new State of residence, a discriminatory classification, [suc]h as the one rendered by the Massachusetts State Judge, is itself a penalty. The Fourte[ent]h Amendment's Citizenship Clause expressly equates citizenship with residence, [*Saenz, citing Z[obel]*, 457 U. S., at 69] and does not tolerate a hierarchy of subclasses of similarly situated citizens b[ased] on the location of their prior residences.

15. The Supreme Court has consistently held that Congress may not authorize the St[ate]s to violate the Fourteenth Amendment. Moreover, the protection afforded to a citizen by [tha]t Amendment's Citizenship Clause limits the powers of the National Government as well as the Sta[tes.] Congress's Article I powers to legislate are limited not only by the scope of the Framers' affirma[tive] delegation, but also by the principle that the powers may not be exercised in a way that violates o[ther] specific provisions of the Constitution. See *Williams v. Rhodes*, 393 U. S. 23, 29 (1968).

## VII. THE TEXAS STATE JUDGE

16. Judge Mike Wood needs no introduction to this Court beyond that which the Co[urt] can read in the opinion of the United States Court of Appeals for the 5th Circuit in *United State[s v.] Betty Jordan*, 49 F.3d 152 (5th Cir. 1995). In the *Jordan* case, Judge Wood and his wife spent s[uch] a great deal of time and telephonic contact with the federal trial court that the 5th Circuit's conce[rn] over Wood's perceived abilities to influence the federal judiciary caused the 5th Circuit to order [a]

case moved out of Texas and into the United States District Court for the State of Louisiana In the case at bar, Judge Wood has been at it again. Counsel learned on Friday the 16th of September 2005, that Mr. O' Sullivan's office had received faxes from Judge Wood's office; that the purported *ad litem* appointed by the local state Court had also received *ex-parte* faxes – all of which is confirmed when the Massachusetts State Judge ORDERED that Perry Lee Whately be "deported" from the Commonwealth upon order issued by Judge Mike Wood.[5] The State Court judge opined that perhaps this Court might be heard to complain about the deportation of one of its litigants with an active and pending case, and that its void orders should remain in effect until a Texas Judge overrules this Judge and its Art III powers.[6] As stated in his affidavit, undersigned counsel for Mrs. Whately has been an attorney for 15 years, and never thought that he would see a State Judge, on the record in open court, state that she was "ignoring" the First Circuit and would proceed despite its mandate that she had a *"duty* to proceed no further." *Sweeney, supra* (emphasis added).

---

[4] It is well settled law that in a criminal case there are only two parties; the Government, and the defendant. In *U.S. v. Jordan*, Judge Mike Wood, while a sitting probate Judge, "filed" "amicus" brief urging the 5th Circuit to affirm the defendant's conviction. Judge Reynaldo Garza of the 5th Circuit struck the brief from the appellate record, correctly finding it to be improper. That act is not one that would normally be associated with state judges but, in Judge Wood's case, is a pattern of behavior that stains the 3rd branch of Government.

[5] Judge Wood is not the Governor of Texas.

[6] When Judge Mike Wood cannot physically assault a litigant, he will use the telephone to contact other judicial officers to achieve his goals. This Court should not be the least bit surprised when in days to come, it receives a call from Mike Wood cordially asking this Judge to violate her oath. Counsel is not insinuating that this Judge will do so, only that Judge Mike Wood may call and try to persuade this Judge to do what he does. When the call comes, the Court's sensibilities will be highly offended. The use of the words "blind hatred" by the 5th Circuit to describe Judge Wood is not an exaggeration by that Court.

## VIII. REQUEST FOR RELIEF

17.   This matter presents this Court with a crisis of constitutional dimension [and] mandates that this Court order the parties to appear an show cause why a preliminary injun[ction] should not be granted pending a trial in the merits. In the interim, Movants request that the C[ourt] enter a Temporary Restraining Order forbidding the removal of Mr. Whately from this Co[urt's] jurisdiction, that it enjoin any further harassment of Mr. Whately by the service of void papers v[ia] a patient at Beth-Israel, and that the Court ministerially invalidate all orders entered by the S[tate] Court entered after removal, and invalidate as well the void papers served on Mr. Whatley at [Bet] Israel at the behest of Roy Fuller by Mr. O'Sullivan's efforts after removal to this Court. [The] affidavit of Daniel Shea attached hereto as Exhibit "B," *supra*, and duly incorporated herei[n by] reference supports the Temporary Restraining Order and its issuance in emergency, *ex-parte* fash[ion].

<table>
<tr><td>

Respectfully submitted,

PERRY LEE WHATLEY,

By: /s/ Susan Norman / dh  
*w/ express permission*  
SUSAN B. NORMAN  
Texas Bar No. 15083020  
LAW OFFICE OF SUSAN B. NORMAN  
9135 Katy Fwy., Suite 100  
Houston, TX 77024  
(713) 465-3344  
(713) 468-6243 Telecopier  
*PRO HAC VICE* (PENDING)

</td><td>

Respectfully submitted,

DAWN JOHNSON WHATLEY,

By: /s/ Daniel Shea  
DANIEL J. SHEA  
Mass. B.B.O. # 652896  
DANIEL J. SHEA, P.C.  
1928 West Bell Street  
Houston, TX 77019-4814  
(713) 942-7500  
(713) 942-7507 Telecopier

</td></tr>
</table>

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    TRIAL COURT OF MASSACHUSETTS
                                                PROBATE AND FAMILY COURT DEPT.
                                                DOCKET NO. 05-P-2003

*IN RE:* THE MATTER OF PERRY LEE WHATLEY

**NOTICE OF REMOVAL**

TO THE HONORABLE JUDGE OF SAID COURT:

    PERRY LEE WHATLEY, Defendant, hereby gives notice of removal of the above styled and numbered cause to the United States District Court for the District of Massachusetts.

    Defendant DAWN JOHNSON WHATLEY, the legal spouse of Defendant Perry Whatley, joins in this removal.

    Pursuant to 28 U.S.C. § 1446 (d), State Court jurisdiction now terminates and the State Court shall proceed no further in this matter unless the case is remanded. *Sweeney v. RTC,* 16 F.3d 1 (1st Cir. 1994).

    Defendant attaches as Exhibit "A," and incorporates herein by reference the *Notice of Removal* filed today in the United States District Court.

Respectfully submitted,                         Respectfully submitted,

PERRY LEE WHATLEY,                              DAWN JOHNSON WHATLEY,

By: _/s/ Ken Shulman/ds_                        By: _/s/ Daniel J. Shea_
      _ex rel. perm._
KEN SHULMAN                                     DANIEL J. SHEA
B.B.O. # 460420                                 B.B.O. # 652896
LAW OFFICE OF KEN SHULMAN                       DANIEL J. SHEA, P.C.
Ten Winthrop Square                             1928 West Bell Street
Boston, MA 02110-0000                           Houston, TX 77019-4814
(617) 351-0100                                  (713) 942-7500
(617) 426-5251 Telecopier                       (713) 942-7507 Telecopier

-1-                                             EXH "A"

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing *Notice of Removal* was served pursuant MASS. R. CIV. P. 5 on the 16th day of September 2005 to the individuals and in the manner indicated below:

| | |
|---|---|
| Mr. James M. O'Sullivan<br>O'SULLIVAN & ASSOCIATES, P.C.<br>17 Accord Park Drive, Suite 104<br>Norwell, MA 02061-0000<br>ATTORNEY FOR SOUTHWEST<br>BOSTON SENIOR SERVICES, INC. | Hand Delivery |

_____
DANIEL J. SHEA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | § | NO. 05-CA-11881-PBS |
| | § | |
| THE MATTER OF | § | REMOVED FROM THE |
| | § | MASSACHUSETTS TRIAL |
| PERRY LEE WHATLEY | § | COURT DOCKET NO. 05-P-20 |

## AFFIDAVIT OF DANIEL J. SHEA

"I am an attorney licensed to practice law in the State of Texas, the Commonwealt  f Massachusetts, and also admitted to practice in the United States District Courts in the Sout  1 District of Texas and the District of Massachusetts. I am over the age of 18 years, men:  y competent, and not disqualified by law from making an affidavit. Except where otherwise quali  l as personal or professional legal opinion, I have first hand knowledge of the facts hereinafte:  t forth and they are true and correct.

"I am the attorney for Dawn Johnson Whatley in the above captioned case, in the underl  ; removed case 05-P-2003, and in Case No. 355,059 in Probate Court No. 2 of Harris County, Te  .

"On September 16, 2005, I attended, under protest, a hearing before Massachusetts S  ; Court Judge E. Chouteau Merrill in the removed case. Because that judge proceeded without sub  t matter jurisdiction after I filed a notice of removal and alerted her of its filing, I have ordered, (  t rush basis, a written transcription of the tape recordings of those proceedings. The Clerk's of  ; has informed me that a transcription would not be available for at least ten (10) days. Hence I m  : this affidavit as my best recollection of the pertinent events at the September 16, 2005 hearin;  · support an emergency application for temporary relief.

"On September 16th 2005, after filing a *Notice of Removal* in this Court, I properly served . filed a certified copy of the federal *Notice of Removal* on the Parties and the State Court under co of a state court *Notice of Removal*. The state court *Notice of Removal* makes explicit referenc Justice Breyer's forceful opinion in *Sweeney v. Resolution Trust Corporation*, 16 F.3d.1, (1ˢᵗ ( 1994).

"At the beginning of the September 16, 2005 hearing, I had alerted Judge Merrill that  case was removed pursuant to the authority in the *Sweeney* case which was cited explicitly in state court notice of removal which she had before her. She stated she would 'ignore' *Sweeney* ¿ that '...[I] can appeal it if [I] want to.' As the hearing progressed and it became clear that she v going to take evidence and act judicially contrary to the Supremacy Clause, I again and repeate objected and ultimately read directly into the record from *Sweeney* about the fact that she v 'absolutely' without jurisdiction, and had a 'duty' not to proceed – emphasizing that that strc language was Justice Breyer's, not mine. She simply would not relent.

-1-

"Judge Merrill was apparently very angry – and her actions evidenced an 'I could care less' about the consequences' tenor that I have never observed from any Judge in my fifteen years of practice. I was flabbergasted.

"At a later point in the hearing, Judge Merrill accused my client of trying to evade jurisdiction of the Texas courts. She invited my response. Again, reserving jurisdictional objection, I pointed out to the Court that the Application of SWBSSI had been based on 'elder abuse,' not jurisdictional avoidance and that that accusation was patently false in light of the Agris affidavit. I was able to get the Agris affidavit marked and admitted into evidence for the record. I recall that the trial judge read the Agris affidavit on the bench with apparent care. When she finished reading, I recall reiterating the argument that there was no elder abuse and that to allege so would indeed be an affront to Drs. Agris, Feinbloom and Beth Israel Hospital and its affiliate, the Joslin Diabetes Clinic inasmuch as diabetes and related foot ulcers are the very complication that prevents r. Whatley's physical rehabilitation from a broken leg sustained as a sequellae to his carotid artery disease – that being the reason he is at Joslin. Nevertheless, Judge Merrill persisted in accusations of jurisdictional avoidance and my recollection is that she compelled me to justify the procedural maneuvers that had arisen in Houston and now, Boston. I asserted that what my client was avoiding is the judicial tyranny of Judge Mike Wood and that I was obligated by my oath as an attorney to resist that tyranny to the fullest of my ability. In spite of my recitation of this egregious judicial misconduct and my characterization of it, Judge Merrill still proceeded to enter Orders without subject matter jurisdiction.

"Based on my first hand knowledge of the facts and my firsthand perception of the behavior of Judges Wood and Merrill, and based on my fifteen years of experience in litigation of some contentious matters, it is my professional opinion that the offending Temporary Order entered by Judge Merrill on September 16, 2005 (post-removal) and the conduct of her confederates constitute an *immediate and dangerous intrusion into the physician-patient relationship for which Perry Whatley has no adequate remedy at law.*

"I observed at the state court hearing on September 16, 2005 that Robert Daniel Whatley, Roy Fuller's client, is now in Boston Massachusetts, and has apparently come to forcibly remove Whatley from the jurisdiction of this Honorable Court when another void state court order is entered either by the State Court Judge here, or the State Court Judge in Houston, Texas. Robert Daniel Whately, acting at the direction of both Roy Fuller and James O'Sullivan, seeks to whisk Perry Whatley away before this Court can reach the merits of this action, thus depriving this Court of lawful Art. III jurisdiction before it can hear and determine the case before it. I reach this conclusion based on an observation made at the last state court hearing in Houston. At that time, Mr. Fuller represented that his clients Jeanie Anderson and Robert Daniel Whatley would settle and stand down for one half of Mr. Whatley's estate.

"Finally, I have read the above and foregoing emergency application for temporary restraining ex-parte, and to the extent that that application contains factual recitations attributable to me recited here, I have first hand knowledge of them and they are true and correct."

AFFIANT SAYS NOTHING FURTHER.

Signed under pains and penalties of perjury this 18th day of September, 2005 at Worcester County, Massachusetts.

_____
DANIEL J. SHEA

**Commonwealth of Massachusetts**
The Trial Court
Probate and Family Court Department

Division: __Suffolk__

Docket No: 05P2003

In the Matter of

_Perry Lee Whatley_

**Temporary Order**

Pending a hearing on the merits or until further order of the court, it is ordered that:

☐ The parties shall comply with a stipulation or agreement of the parties dated _____ ____, which is filed with the Court and expressly made a part of this order.

☐ The orders of 9/14/05 shall remain in full force and effect pending a ruling from either the Federal Court or from the Texas Probate Court.

Mr. Whatley may be evaluated for competency at Beth Israel if the Texas Probate Court so orders or requests.

Mr. Whatley shall not be removed from Beth Israel hospital without court order.

Hearing in Texas on 9/22/05 shall go forward as scheduled. If the Texas court so orders, Mr. Whatley shall be returned to Texas.

Date: 9/16/05

_Chouteau Merrill_
E. CHOUTEAU MERRILL
JUSTICE OF THE PROBATE AND FAMILY COURT

[SPC 1/99]

EXH "C"

NO. 355,095

| | | |
|---|---|---|
| IN RE: THE PERSON AND ESTATE | § | IN THE PROBATE COURT OF |
| | § | |
| OF PERRY LEE WHATLEY, | § | HARRIS COUNTY, TEXAS |
| | § | |
| A PROPOSED WARD. | § | COURT NUMBER (2) TWO |

### AFFIDAVIT OF JOSEPH AGRIS, DDS, MD, FACS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared JOSEPH AGRIS, DDS, MD, FACS, known to me to be the person whose signature appears below and who, being by me duly sworn, did depose as follows:

"My name is Joseph Agris. I am a physician licensed to practice in the State of Texas. I hold degrees in both dentistry and medicine. I am board certified by the American Board of Medical Specialties (ABMS) as a Plastic and Reconstructive Surgeon and I am a Fellow of the American College of Surgeons. I am a clinical assistant professor at and teach medical residents from the Baylor College of Medicine at the Texas Medical Center in Houston. I am one of several treating physicians of Perry Lee Whatley and in addition, I am his medical case manager. I have first-hand knowledge of the facts hereinafter set forth, either through direct participation in his case or through consultation with my colleagues and review of his medical records. The facts and opinions hereinafter set forth are true and correct.

"In early July 2005, I was retained by my patient's wife, Dawn Johnson Whatley, as both a treating physician and overall case manager. By way of background, when I took over his case, Mr. Whatley had fallen approximately one year earlier from lack of balance that, in reasonable medical probability, was caused by blockage of his carotid arteries that supply blood to his brain. He had been previously treated at a hospital in Baytown, Texas and significantly he was told that his carotid artery blockages were inoperable. Thus, Mrs. Whatley came to me among other reasons, for a second opinion on the operability of the carotid arteries since she had heard of (and I confirmed) new, state-of-the-art graft techniques.

"My first decision was to bring the case to the DeBakey Heart Institute and vascular surgeon Dr. George Noon who is a cardiovascular surgeon of first-rank, world-class repute. After appropriate imaging and other studies, the team determined that Mr. Whatley's carotid blockages were surgically accessible and that his overall physical condition would allow surgery to be performed on him. Mr. Whatley, himself, consented to these surgeries, approximately ten days apart. I personally assisted in the first of these surgeries and my residents in the second. Both were successful and Mr. Whatley has complete blood flow on both sides.

"Before these surgeries, the records show that Mr. Whatley suffered some mental lassitude as a result of the decreased blood flow. This lassitude was ameliorated with oxygen. Significantly, after the carotid surgeries, oxygen administration was and is no longer necessary and Mr. Whatley demonstrates mental faculties appropriate to a man his age who has, for almost a year, been quite ill.

EXH. "D"

"After the carotid surgeries, Mr. Whatley consented to a third surgery in which I removed from his right neck a nodular basal cell carcinoma in the operating room. Pathology report shows the margins free from tumor and reconstruction of the neck was successful. The prognosis on this matter is excellent with a six month follow-up with me.

"Having completed the carotid and neck surgeries, we next turned our attention to Mr. Whatley's need for post-surgical recovery, then physical rehabilitation of the year old leg fracture -- within his physical and age limitations and also, within the restrictions associated with his status as a Type II diabetic. Not surprisingly, Mr. Whatley's post-carotid improvement resulted in increased physical activity that caused a blister to develop on his right heel. Initially he was seen for this at a satellite hospital. However, at that time, Dr. Garber, a first rate endocrinologist I wanted to attend to the diabetic problems that hamper full rehabilitation, was not taking any new patients. Further, in-hospital admissions at the Texas Medical Center in Houston are severely restricted due to the impact of Hurricane Katrina. Consequently, I recommended that Mr. Whatley be admitted to Deaconess Beth Israel Hospital in Boston because of its affiliation with the world renowned Joslin Diabetes Clinic. On Monday evening September 12, 2005, I was finally able to communicate with Dr. Feinbloom at Beth Israel and he agreed to accept Mr. Whatley immediately as a direct admit. Since I had participated in Mr. Whatley's surgeries, observed and treated him under anesthesia, and have been his case manager, I was able to certify him as fit to travel and I instructed Mrs. Whatley to take him immediately to Boston. I understand that the satellite hospital in Channelview from which he was taken, Triumph Hospital, required a seventy-two hour advance notice to effect an inter-hospital transfer. Since I had independently certified Mr. Whatley as fit to travel by air without restriction, Mrs. Whatley removed him immediately from Triumph Hospital supposedly "against medical advice." That assertion will be seen to be in error. The intent here was not for an inter-hospital transfer, but instead, a discharge from Triumph and direct admit to Beth Israel.

"In my medical opinion, with my first-hand knowledge of Mr. Whatley's overall medical condition, it was in his best interest that his wife, Dawn Johnson Whatley, follow my medical advice to move him immediately by air to Deaconess Beth Israel Hospital in Boston because of its affiliation with the world renowned Joslin Diabetes Clinic."

AFFIANT SAYS NOTHING FURTHER.

JOSEPH AGRIS, DDS, MD, FACS

SUBSCRIBED AND SWORN TO BY JOSEPH AGRIS, DDS, MD, FACS this 15th day of September, 2005, to certify which, witness below my hand and seal of office.

SEAL: 

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

☒002

**ROY L. FULLER, P.C.**
ATTORNEY AT LAW
1800 [illegible], SUITE 500
BAYTOWN, TEXAS 77521
281-[illegible]
[illegible]

BOARD CERTIFIED
ESTATE PLANNING & PROBATE
TEXAS BOARD OF LEGAL SPECIALIZATION

September 15, 2005

A TRUE COPY ATTEST
BY _David G. B. Dugan, Sr._
Constable of Boston

Mr. Jim O'Sullivan
Attorney at Law

Via Facsimile: (781)871-4544

RE: Cause No. 355,095; In Re: Guardianship of the Person and Estate of Perry Lee
Whatley, Incapacitated; in the Probate Court No. 2, Harris County, Texas

Dear Mr. O'Sullivan:

It is my understanding that you have agreed to serve Perry Whatley the attached Application for Temporary Guardian of the Person and Estate and Order Setting Hearing. Please complete the Officer's Return and fax it to me at (281)427-9564 and mail the original back to my office for filing with the Court.

I appreciate your assistance in this matter. Should you have any questions, please do not hesitate to contact me.

Sincerely,

Roy L. Fuller

RLF:sld
Enclosure

EXH. "E"