UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NO: 05CA11881 PBS

IN RE:

THE MATTER OF

PERRY LEE WHATLEY



In Open Court
USDC, Mas
Date 9-21-05

## AFFIDAVIT OF THE GUARDIAN AD LITEM

TO THE HONORABLE UNITED STATES DISTRICT COURT

I, George A. Rodriguez, hereby declare and swear the following:

1. I am a duly licensed attorney in the Commonwealth of Massachusetts in good standing with a primary business address of 21 McGrath Highway, suite 201, Quincy, MA 02169.

2. On or about September 14, 2005, I was appointed Guardian Ad Litem, In the Matter of Perry Lee Whatley in the Probate and Family Court of Massachusetts, Suffolk Division, Docket Number 05P2003, by the Honorable Judge E. Chouteau Merrill.

3. As part of my investigation I spoke with Attorney Black. Attorney Black had been appointed as Attorney Ad Litem under a guardianship petition filed in Texas. The matter was filed on April 14, 2005, in Harris County Probate Court, Texas Cause Number 395,095. The matter is captioned Guardianship of Perry Lee Whatley An Incapacitated Person, Probate Court No. 2 of Harris County, Texas.

4. The information contained in this affidavit is information I received from Attorney Ray J. Black, Court Appointed Counsel in the Texas Probate matter, Marilyn Lewis, Guardianship Coordinator, Harris County Probate Court No. 2, Kim Sulmonte, Nurse Manager, Beth Israel Hospital, Dr. Stefanos Parpos, Beth Israel Hospital as well as records received from Beth Israel Hospital and Guardianship of Perry Lee Whatley An Incapacitated Person, Probate Court No. 2 of Harris County, Texas.

5. Mr. Whatley's niece and nephew have filed a guardianship petition on their uncle Perry Whatley. Mr. Whatley's personal care physician, Dr. Jankoweki declared Mr. Whatley incompetent. Subsequently the Court in Texas appointed a Court

Investigator, Chris Forbes. Mr. Forbes filed a report with the court supporting the guardianship.

6. An Independent Evaluation was conducted by Dr. Kunik in July, 2005 upon the motion of Attorney Black for an independent examination. Dr. Kunik found Mr. Whatley to be incompetent in all areas.

7. Mrs. Whatley has hired Attorney Shea to represent her in the Guardianship Petition. Mr. Shea has filed numerous Motions to Recuse the presiding Judge on the matter, as well as a motion to recuse the judge hearing the motion to recuse. Attorney Shea filed suit against all the parties including Attorney Black and Judge Wood. He then amended his Motion to Recuse, as Judge Wood was now a defendant in the civil suit he filed. Attorney Susan Norman was also hired to be counsel for Mr. Whatley.

8. Judge Wood was dismissed as a party defendant in the civil suit on grounds of judicial immunity and the Motion to Recuse was heard by Judge Austin and denied. The ruling was appealed to Texas Court of Appeals. Attorney Shea attempted to remove the matter to the Federal Court in Texas. The Federal Court remanded the matter back to the State Court.

9. The matter was scheduled for a hearing on the issue of a temporary guardianship on September 9, 2005. Neither attorney Black nor the process server was able to locate Mr. Whatley. On September 9, 2005, the Texas Probate Court ordered Attorney Norman to produce Mr. Whatley to the Court on September 12, 2005.

10. On September 12. 2005, neither Mr. Whatley nor Attorney Norman appeared at the scheduled hearing. On September 12, 2005, Judge Wood entered an Order to Show Cause as to Attorney Norman. Also on September 12, 2005, Judge Wood scheduled the Temporary Guardianship Hearing for Thursday, September 22, 2005 at 2:00 p.m. On even date the Court appointed a Guardian Ad Litem named Lloyd Wright.

11. Judge Wood inquired of Attorney Shea, under oath, if he knew of Mr. Whatley's location. Attorney Shea stated that he did not know Mr. Whatley's whereabouts.

12. On September 13, 2005, a Petition for Protection of Elderly Person was filed in the Texas Probate Court. The reported diagnoses were; cerebral vascular disease, peripheral vascular disease, chronic hip fracture, mild problems with long term memory and moderate deficits in short term memory.

13. Texas Adult Protective Services started contacting local hospitals and located Mr. Whatley at Triumph Hospital. On September 13, 2005, the Court issued an Ex Parte Emergency Protective Order. When protective services arrived at the hospital they were informed that his wife, Dawn Whatley, had checked Mr. Whatley out of the hospital against medical advice.

14. Mr. Whatley was flown to Boston on September 13, 2005. Mr. Whatley arrived at the Beth Israel Hospital around 8:00 pm., accompanied by Dawn Whatley and Attorney Shea.

15. As part of my investigation I reviewed the medical record and interviewed staff at the Beth Israel Hospital. Dr. Agris had contacted Beth Israel concerning a hospital-to-hospital transfer of Mr. Whatley. Dr. Agris had been hired by Mrs. Whatley to oversee her husband's care. Dr. Agris was not the physician tending to Mr. Whatley at Triumph Hospital.

16. Mr. Whatley was admitted on report of uncontrolled blood sugars and ulcerations on his feet. Hospital staff reported that Mr. Whatley came in looking well. It was reported that he had reasonable sugar control; there were some concern about drops in sugars overnight. It was also reported that the foot ulcers were not acute.

17. A consult with the Joslin Clinic was arranged. Nurse Manager Kim Sulmonte reported that the hospital made minor adjustments in the timing and dosing of Mr. Whatley's insulin. He had a podiatry consult and no action was required. Ms. Sulmonte reported that Mr. Whatley was not unsafe to manage his diabetes at home and his feet need to be non weight bearing as they were not infected.

18. Dr. Parpos reported that a Hemoglobin A1C test was conducted and Mr. Whatley had a level 6. Dr. Parpos reported that a level 6 indicates that for the last three months Mr. Whatley's blood sugars have not been abnormal. Dr. Parpos was going to have Mr. Whatley evaluated for rehab potential.

19. Dr. Parpos states that Mr. Whatley did not remember him from one day to the next. According to Dr. Parpos, Mr. Whatley was at least mildly impaired, but stated that he was not a psychiatrist.

20. Ms. Sulmonte reported that physical therapy assessed Mr. Whatley for rehabilitation. Based on information received from Mrs. Whatley and observation it was determined that Mr. Whatley did not need rehabilitation as he had not walked in four months and was lifted out of bed.

21. According to hospital records and personnel, Mr. Whatley does not meet hospital level of care and has not since his admission.

Signed under the pains and penalties of perjury.

George A. Rodriguez, Esquire

September 20, 2005.