FILED
IN CLERKS OFFICE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

*IN RE:*                                    §                        2005 OCT 12  A 10: 37

                                            §

THE MATTER OF                               §            NO. 05-CA-11881-PBS
                                                         DISTRICT OF MASS.

                                            §

PERRY LEE WHATLEY                           §            JURY TRIAL DEMANDED

## DEFENDANTS' FIRST AMENDED COUNTERCLAIM
## WITH RULE 19(a)(1) JOINDER OF PERSONS NEEDED FOR COMPLETE RELIEF
## AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

**THIS AMENDED PETITION ADDS TWO STATE COURT JUDGES: MIKE
WOOD AND E. CHOUTEAU-MERRILL. COUNSEL IS WELL AWARE
THAT JUDGES ENJOY ABSOLUTE JUDICIAL IMMUNITY FOR ALL
ACTS TAKEN AS A JUDGE. HOWEVER, IF THE JUDGE ACTS
WITHOUT JURISDICTION, THEN HE OR SHE IS STRIPPED OF THAT
IMMUNITY AND IS LIABLE IN TORT FOR ALL DAMAGES AND
ATTORNEY'S FEES. IN ADDITION, SHOULD A JUDGE POSSESS
JURISDICTION, THE JUDGE CAN BE STILL BE SUED FOR INJUNCTIVE
RELIEF IF THE CONDUCT VIOLATES THE SUPREMACY CLAUSE OF
THE CONSTITUTION OR THE CIVIL RIGHTS OF A CITIZEN. COUNSEL
IS MINDFUL OF HIS OBLIGATIONS UNDER FED. R. CIV. P. 11 AND
PROCEEDS ACCORDINGLY. NEITHER STATE JUDGE INVOLVED CAN
CLAIM JUDICIAL IMMUNITY AS EACH, BY HIS OR HER OWN
ADMISSION, ACTED WITHOUT SUBJECT MATTER JURISDICTION.**

Defendants PERRY LEE WHATLEY and DAWN JOHNSON WHATLEY hereby amend

their counterclaim against SOUTHWEST BOSTON SENIOR SERVICES, INC., and, pursuant to

FED. R. CIV. P. 19, also now complain of MICHAEL J. WOOD, E. CHOUTEAU MERRILL,

VALERIE MILHOLLAND, JEANIE ANDERSON, ROBERT DANIEL WHATLEY, ROY. L.

FULLER, RAY J. BLACK, JR., and JIMMIE WALKER, as persons needed for just adjudication

of the amended counterclaim, and would show as follows:

## I. JURISDICTION AND VENUE

Removal jurisdiction has been properly invoked pursuant to 28 U.S.C. § 1446 (a), 28 U.S.C.

§ 1443 (1) (2), 42 U.S.C. § 1983, and 28 U.S.C. § 1332. This First Amended Counterclaim rests on 42 U.S.C. § 1983.

Venue is proper in the District of Massachusetts.

## II. PARTIES

The Parties to the proceeding are as follows:

Counterclaimant PERRY LEE WHATLEY is a citizen of the Commonwealth of Massachusetts. He is represented by Ms. Susan B Norman, LAW OFFICE OF SUSAN B. NORMAN, Ten Winthrop Square, Boston, MA 02110; telephone: (617) 351-0100, telecopier: (617) 426-5251.

Counterclaimant DAWN JOHNSON WHATLEY is the spouse of Defendant Perry Lee Whatley. She is a citizen of the Commonwealth of Massachusetts. She is represented by Mr. Daniel J. Shea, Esq., DANIEL J. SHEA, P.C., 1928 West Bell Street, Houston, TX 77019-4814; telephone: (713) 942-7500, telecopier: (713) 942-7507.

Counterdefendant/Co-conspirator SOUTHWEST BOSTON SENIOR SERVICES, INC., "SWBSSI," is a contractor to the Commonwealth of Massachusetts acting under color of state law. "SWBSSI" is represented by O'SULLIVAN & ASSOCIATES P.C., Mr. James M. O'Sullivan Esq., 17 Accord Park Drive, Suite 104, Norwell MA 02061; telephone: (781) 982-1700, telecopier: (781)871-4884. They have been served but have not answered.

Counterdefendant/Co-conspirator MICHAEL J. WOOD is a natural person and private citizen of the State of Texas. He may be served with process at 8714 Hardeman Ct., Houston, Harris County, TX 77064 pursuant to FED. R. CIV. P. 4(e).

Counterdefendant/Co-conspirator E. CHOUTEAU-MERRILL is a natural person and private citizen of the Commonwealth of Massachusetts. She may be served with process at Edward W. Brooke Probate and Family Law Center, 24 New Chardon St., Boston, MA 02114 pursuant to FED.

R. CIV. P. 4(e).[1]

Counterdefendant/Co-conspirator VALERIE MILHOLLAND is a natural person and private citizen of the State of Texas. She may be served with process at 5727 Rutherglenn, Houston, Harris County, Texas 77096 pursuant to FED. R. CIV. P. 4(e).

Counterdefendant/Co-conspirator JEANIE ANDERSON is a natural person and private citizen of the State of Texas. She may be served with process at 2905 Parkland, Baytown, Texas 77521, pursuant to FED. R. CIV. P. 4(e).

Counterdefendant/Co-conspirator ROBERT DANIEL WHATLEY is a natural person and private citizen of the State of Texas. He may be served with process at 2711 Alderwood, Austin, Texas 78745, pursuant to FED. R. CIV. P. 4(e).

Counterdefendant/Co-conspirator ROY L. FULLER is a natural person and private citizen of the State of Texas. He may be served with process at 1300 Rollingbrook, Suite 608, Baytown, Texas 77521, pursuant to FED. R. CIV. P. 4(e).

Counterdefendant/Co-conspirator RAY J. BLACK, JR. is a natural person and private citizen of the State of Texas. He may be served with process at One Riverway, Suite 1700, Houston, Texas 77056 pursuant to FED. R. CIV. P. 4(e).

Counterdefendant/Co-conspirator JIMMY WALKER is a natural person and private citizen of the State of Texas. He may be served with process at DINKINS, KELLY, LENOX, LAMB & WALKER, L.L.P., 815 Walker, Suite 240, Houston, Texas 77002-5721 pursuant to FED. R. CIV. P. 4(e).

## III. ANSWER

1. Defendants admit paragraph 1 of the removed petition.

2. Defendants deny in its entirety paragraph 3 ©) of the removed petition and admit the

---

[1] Judge E. Chouteau Merrill is sued for injunctive relief only at this time.

-3-

remainder.

3.    Defendants admit paragraph 4 of the removed petition.

4.    Defendant denies paragraph 5 of the removed petition.

5.    Defendants deny in their entirety paragraphs 6, 7, 8, and 9 of the removed petition.

### IV. DEFENDANTS' FIRST AMENDED COUNTERCLAIM

6.    Defendants/Counterclaimants PERRY LEE WHATLEY and DAWN JOHNSON
WHATLEY, hereinafter "the Whatleys," bring this First Amended Counterclaim against all the
named Co-conspirators predicated on conspiracy to violate 42 U.S.C. §1983 and would show the
Court as follows:

### Background Facts

7.    On or about October 11, 2004, PERRY LEE WHATLEY revoked a Durable Power
of Attorney he had previously executed in favor of Defendant JEANIE ANDERSON and any named
successor. The revocation was filed as provided in TEX. PROB. CODE § 488. The revocation was
prompted by Perry Lee Whatley's dissatisfaction at Defendant ANDERSON'S continued ignoring
of his wishes to return his personal financial and estate planning documents to him which she
retained in her possession against his express wishes and demand that she return them to him, her
refusal to communicate with him regarding his financial resources, and her high-handed attempt to
prevent him from returning to his home after a hospital stay.

8.    On January 7, 2005, contemporaneous with his application for a marriage license,
PERRY LEE WHATLEY executed a *Statutory Durable Power of Attorney* pursuant to TEX. PROB.
CODE § 481 *et seq.* The Designated Attorney-in-Fact was DAWN JOHNSON, now DAWN
JOHNSON WHATLEY, Defendant/Counterclaimant herein.

9.    On January 10, 2005, PERRY LEE WHATLEY married DAWN JOHNSON

-4-

WHATLEY in a duly authorized religious ceremony by an ordained and licensed Baptist minister.

10.    On March 22, 2005, PERRY LEE WHATLEY executed a *Declaration of Guardian In The Event of Later Incapacity or Need of Guardian* pursuant to TEX. PROB. CODE § 679. It expressly disqualified Defendants JEANIE ANDERSON and ROBERT DANIEL WHATLEY, among others, from serving as Guardians of either the person or the estate of Perry Lee Whatley.

11.    On April 14, 2005, Defendants ROY L. FULLER, JEANIE ANDERSON and ROBERT DANIEL WHATLEY filed an *Application for Appointment of Guardian of Person and Estate of Perry Lee Whatley.* The Application is supported by an alleged "opinion" obtained by the FULLER, ANDERSON, and ROBERT DANIEL WHATLEY Defendants, surreptitiously, and in egregious, direct violation of Mr. Whatley's privacy rights and safeguards as defined by HIPAA. Although this "opinion" was full of reservations by Dr. Yulan Y. Jankowski stating that she was unqualified to give the "opinion" she signed, Defendants FULLER, ANDERSON and ROBERT DANIEL WHATLEY used it nevertheless. The *Application* contained no request for Appointment of a Temporary Guardian.

12.    The Whatleys' review of the "opinion" used by the FULLER, ANDERSON and ROBERT DANIEL WHATLEY Defendants in their *Application* flew in the face of information and medical opinions previously given to the Whatleys by Dr. Jankowski to the effect that 'Mr. Whatley's mental state was *[a] not* seriously affected by blockage in both carotid arteries, although [b] it would eventually get worse without surgery which [c] could not be done because the blockages were inoperable.' Faced with this conflict in opinions expressed by the same physician, Mrs. Whatley subsequently arranged for Mr. Whatley to be taken to The Methodist Hospital in Houston for evaluation by Dr. George P. Noon, a world-renowned cardio-vascular surgeon. Dr. Noon evaluated Mr. Whatley and determined the blockages to be severe, yet accessible and operable.

-5-

13.     On July 22, 2005, DAWN JOHNSON WHATLEY filed PERRY LEE WHATLEY'S statutory *Designation of Guardian in the Event of Later Need* executed by him on March 22, 2005. She is the guardian designated in that document by PERRY LEE WHATLEY.    JEANIE ANDERSON and ROBERT DANIEL WHATLEY are specifically disqualified. Significantly, the July 22, 2005 filing informs the Court, the Applicants, and the attorneys that Mr. Whatley was then scheduled for carotid artery surgery. Mrs. Whatley explicitly declined to offer an opinion on mental capacity, deciding instead to wait for the result of the carotid artery surgeries.

14.     Thereafter, Mr. Whatley himself consented to two operations in which both carotid arteries were cleared and Mr. Whatley now enjoys 100% blood flow to his brain on both sides. He also consented to a third surgery in which a basal cell carcinoma was removed from his neck by Dr. Joseph Agris who also serves the Whatleys as the overall case manager. Significantly, since Dr. Agris had also participated in the first carotid repair, he was able to certify Mr. Whatley's ability to travel and has subsequently related information to physicians at Beth Israel Deaconess concerning Mr. Whatley's overall cardiovascular status and his ability to withstand general anesthesia. Dr. Agris also certified Mr. Whatley to travel to Boston for treatment for diabetes at the Joslin Clinic at Beth Israel Deaconess.

15.     On July 18, 2005, prior to the planned carotid surgery, while Mr. Whatley was under the influence of Vicodin, a strong narcotic pain killer containing codeine, to which he is allergic, Mr. Whatley was evaluated by the I.M.E. assigned by Judge Wood, i.e., Dr. Kunik. Dr. Kunik was explicitly informed prior to his evaluation of (a) the presence of Vicodin in Mr. Whatley's system at the time Dr. Kunik proposed to conduct his examination and (b) that Mr. Whatley was scheduled for carotid artery surgery on July 22, only four days later. Nevertheless, even over Mrs. Whatley's request to wait until her husband was not under the influence of Vicodin and in light of the

-6-

impending surgeries (see par. 13, *supra*), Dr. Kunik chose to go forward with a mental status examination. As a result Dr. Kunik issued a flawed report that mentioned neither (a) the presence of Vicodin in Mr. Whatley's system during the examination nor (b) the pending carotid surgery. He did, however, mention that his observation of some senility had its etiology in cardiovascular disease. On July 28, 2005, after Mr. Whatley's great success from the first carotid artery surgery, Dr. Noon performed surgery on the left carotid artery, again with excellent results.

16.     On August 2, 2005, as Mr. Whatley's mental status continued to improve significantly as a result of the two-sided carotid surgery, Defendants JEANIE ANDERSON and ROBERT DANIEL WHATLEY then supplemented their initial Application for appointment of a guardian of Perry Lee Whatley's person and estate with an Application for Temporary Guardianship based on hearsay allegations of the BLACK Defendant and the afore-stated hearsay report of Dr. Kunick.

17.     Significantly, the August 2 Application for Temporary Guardianship had a proposed typewritten order that appears to propose a hearing date of August 10, 2005. Nevertheless, the WOOD Defendant interlineated the proposed *Order* and set the Temporary Guardianship hearing for August 3, 2005, the next day, with *no notice* to the parties of the pendency of the *Application*. Indeed, the *Application* contains no certificate of service and, as later developments would illustrate, appears to be a prime example of conspiratorial *ex-parte* communication between the WOOD, FULLER, and BLACK Defendants.[2]   Also, significantly, the order setting hearing served by the FULLER Defendant is not a copy of the interlineated order signed by the WOOD defendant. It is a completely different, typed document which gives the corrected, interlineated hearing date as set by the WOOD Defendant, which operates to conceal the fact that the WOOD Defendant set a hearing

_____

[2] It is also probative that the interlineated Order signed by the WOOD Defendant, violates the1993 safeguards the legislature inserted into temporary guardianship proceedings at TEX. PROB. CODE § 875 (b) through (g),to prevent the very kind of judicial "railroading" evident here.

a week earlier than he had been asked to do by the FULLER Defendant on behalf of the
ANDERSON and ROBERT DANIEL WHATLEY Defendants.[3]

18.     With regard to the hearing, counsel fortuitously learned of its setting and Mrs.
Whatley immediately subpoenaed Dr. Kunik. Subsequently, the BLACK Defendant bragged to Ms.
Norman, private counsel for Mr. Whatley, that KUNIK had contacted WOOD, again, *ex-parte*, upon
receipt of the subpoena, and was instructed by WOOD not to appear. Indeed, Dr. Kunik did not.
appear at the August 3, 2005 hearing.

## CONSPIRACY TO VIOLATE CIVIL RIGHTS

19.     In September of 2005, the Whatleys came to the Commonwealth for the stated
purpose of superior medical treatment. Unknown to them was that Mike Wood had hired Valerie
Millholland to commence an elder abuse proceeding. As part and parcel to this charade, Milholland
and Wood docketed and used a 1970 closed file to issue orders to have Mr. Whatley taken into
custody. When the defendants discovered that the Whatleys were in Boston, they turned the task
over to SWBSSI who in turn filed an elder abuse petition. Compounding that fraud, Wood contacted
Chouteau-Merrill who in violation of Art VI Sec 2, then overruled the 1st Circuit and the supremacy
clause and ordered that Perry Lee Whatley be extradited to Texas. Despite admitting to Wood that
she (Merrill) had no jurisdiction, Merrill and Wood contrived to kidnap Whatley until Judge Gorton
of this Court stepped in. On September 29th 2005, Wood reiterated his conspiracy with Merrill and
both have made it clear that they intend to force the Whatleys out of the Commonwealth despite the
constitutional safeguards that neither believe apply to the Whatleys. Again, neither Wood nor
Merrill had subject matter jurisdiction over either of the Whatleys. The Whatleys will suffer an

---

[3]     Further, the evident *ex-parte* communication between the BLACK and FULLER
Defendants constitutes violation of the attorney-client privilege and thus, serves as a predicate act
for the breach of fiduciary claim, *infra.*

irreparable harm for which they have no adequate remedy if the Wood and Merrill are not enjoined. In addition and contrary to Federal Law (28 U.S.C. 1446 (d)), Walker, Wood, Merrill, SWBSSI, Black and Fuller are all operating under a set of invalid orders in that Perry Lee Whatley was never served with notice to appear at the so-called hearing of September 29th 2005 in Texas; the case had been removed, (improper or otherwise) and not remanded until October 5th 2005. Thus, as part of the injunctive relief requested, the Whatleys move that the execution of those orders be enjoined as having been issued in violation of the due process clause as the orders were wholly void as a matter of law.

## Relevant Law

20.    Long ago, in 1888, the United States Supreme Court characterized marriage as "the most important relation in life," and as "the foundation of the family and of society, without which there would be neither civilization nor progress." *Maynard v. Hill,* 125 U.S. 190, 205, 211 (1888). In 1923, the Court recognized that the right "to marry, establish a home and bring up children is a central part of the liberty protected by *the Due Process Clause. " Meyer v. Nebraska,* 262 U.S. 390, 399 (1923)(emphasis added). The Court, again speaking to the issue stated [that] its past decisions make clear that the right to marry is of fundamental importance. *See Loving v. Virginia,* 388 U.S. 1 (1967). The Court's language on the latter point bears repeating, "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men. Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival." *Id.* at 12, *quoting Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 541 (1942). Although *Loving* arose in the context of racial discrimination, prior and subsequent decisions of the Court confirm that the right to marry is of fundamental importance for all individuals. And in *Skinner* itself, marriage was described as "fundamental to the very existence and survival of the

race." *Id.* at 541.

21.     More recently, in 1967, the Supreme Court, *referring to the Fourteenth Amendment*, stated, "[w]hile this Court has not attempted to define with exactness the liberty thus guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also [for example,] *the right to marry*, establish a home and bring up children." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1967)(emphasis added). Since 1967, the Court has also held that the right to marry the person of one's choosing is a core fundamental right that the States ought clearly not interfere with.

### The Instant Case

22.     *Stare decisis* notwithstanding, the Commonwealth, acting through SWBSSI, has nevertheless interposed itself between a lawfully wedded husband and wife and managed to convince a Massachusetts state court to enjoin a *res* that is outside that Court's jurisdiction and to enjoin Mr. Whatley from receiving vital medical treatment as directed by his physician, Dr. Joseph Agris. By contrivance, false statements, and using the arm of the State, the Texas niece and nephew have interfered with the most basic fundamental rights of the Whatleys. In that regard, annexed hereto as Exhibit "A" and duly incorporated herein by reference is the *Affidavit of Dr. Joseph Agris*, Mr. Whatley's treating physician, as to why the Whatelys, of their own free will, decided to follow his advice and come to Boston for medical treatment on September 13, 2005. More importantly, no Texas Court had at the time entered any orders prohibiting Mr. or Mrs. Whatley from traveling or from seeking medical care in another state. In fact, because of the on-going, in-hospital medical treatment referenced in the affidavit of Dr. Agris, *supra*, Mr. Whatley has *never been served* with the Texas temporary guardianship application – it being against policy of The Methodist Hospital

-10-

to let process servers run amok in the DeBakey Heart Institute.

23.     Thus, the foregoing actions of the Defendants constitute a violation of the Civil Rights of the Whatleys by the use of the State Court mechanisms – begun and put in process by Harris County, Texas through its officials, and now extending to the Massachusetts State Officials here. This constitutionally impermissible conduct deprives both Mr. and Mrs. Whatley due process of law, life, liberty and the freedom to do with their lives as they please for which they now sue SWBSSI for damages in excess of $75,000.00 plus their exemplary damages, costs and attorney's fees.

## V. INJUNCTIVE RELIEF

24.     The Whatelys move the Court to set this matter for a preliminary injunction and the that the following relief pending a trial on the merits be granted:

- A.     That all orders entered by the Texas State Court be enjoined from execution as same were made while the case was removed. (The matters need to be reset if they are still viable);

- B.     That all the defendants be enjoined from attempting to remove the Whatleys from the Commonwealth as they are legal residents of Massachusetts and have the right to be here;

- C.     That any hearings to determine guardianship be held at a time and place consistent with due process and that the Whatleys be given notice so that they can exercise their remedies, if any.

25.     The Whatleys also request that upon trial of the case, they have permanent injunctive relief.

-11-

## VI. REQUEST FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Defendants/Counterclaimants pray that the additional defendants be cited to appear and answer herein and that upon trial of this cause the Court enter judgment that SWBSSI take nothing by virtue of its claims, that the case against the Whatleys be dismissed with prejudice, and that on the counter-claim the Whatleys be awarded their actual damages, court costs, and attorney's fees, as well as a preliminary and permanent injunction forbidding SWBSSI from renewing any petition in the State Courts against them in connection with their residency in Massachusetts and corresponding medical treatment as this Court now has exclusive jurisdiction under 28 U.S.C. § 1332, and 42 U.S.C. § 1983.

Respectfully submitted,

PERRY LEE WHATLEY,

By: _Susan C Norman/ A.S._
    _co/exqp. perm._

SUSAN C. NORMAN
Texas Bar No. 15083020
LAW OFFICE OF SUSAN C. NORMAN
9135 Katy Fwy., Suite 100
Houston, TX 77024
(713) 465-3344
(713) 468-6243 Telecopier
*PRO HAC VICE* (PENDING)

Respectfully submitted,

DAWN JOHNSON WHATLEY,

By _Daniel Shea_

DANIEL J. SHEA
Mass. B.B.O. # 652896
DANIEL J. SHEA, P.C.
1928 West Bell Street
Houston, TX 77019-4814
(713) 942-7500
(713) 942-7507 Telecopier

-12-

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing *First Amended Counterclaim, Rule 10 Joinder and Request for Preliminary and Permanent Injunction* was served pursuant to FED. R. CIV. P. 5 on the 12th day of October 2005 to the individuals and in the manner indicated below:

Mr. James M. O'Sullivan                                   U.S. Mail, First Class
O'SULLIVAN & ASSOCIATES, P.C.
17 Accord Park Drive, Suite 104
Norwell, MA 02061-0000
ATTORNEY FOR SOUTHWEST
BOSTON SENIOR SERVICES, INC.

_____
DANIEL J. SHEA

NO. 355.095

| IN RE: THE PERSON AND ESTATE | § | IN THE PROBATE COURT OF |
| | § | |
| OF PERRY LEE WHATLEY. | § | HARRIS COUNTY, T E X A S |
| | § | |
| A PROPOSED WARD. | § | COURT NUMBER (2) TWO |

## AFFIDAVIT OF JOSEPH AGRIS, DDS, MD, FACS

| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared JOSEPH AGRIS, DDS, MD, FACS, known to me to be the person whose signature appears below and who, being by me duly sworn, did depose as follows:

"My name is Joseph Agris. I am a physician licensed to practice in the State of Texas. I hold degrees in both dentistry and medicine. I am board certified by the American Board of Medical Specialties (ABMS) as a Plastic and Reconstructive Surgeon and I am a Fellow of the American College of Surgeons. I am a clinical assistant professor at and teach medical residents from the Baylor College of Medicine at the Texas Medical Center in Houston. I am one of several treating physicians of Perry Lee Whatley and in addition, I am his medical case manager. I have first-hand knowledge of the facts hereinafter set forth, either through direct participation in his case or through consultation with my colleagues and review of his medical records. The facts and opinions hereinafter set forth are true and correct.

"In early July 2005, I was retained by my patient's wife, Dawn Johnson Whatley, as both a treating physician and overall case manager. By way of background, when I took over this case, Mr. Whatley had fallen approximately one year earlier from lack of balance that, in reasonable medical probability, was caused by blockage of his carotid arteries that supply blood to his brain. He had been previously treated at a hospital in Baytown, Texas and significantly, he was told that his carotid artery blockages were inoperable. Thus, Mrs. Whatley came to me, among other reasons, for a second opinion on the operability of the carotid arteries since she had heard of (and I confirmed) new, state-of-the-art graft techniques.

"My first decision was to bring the case to the DeBakey Heart Institute and vascular surgeon Dr. George Noon who is a cardiovascular surgeon of first-rank, world-class repute. After appropriate imaging and other studies, the team determined that Mr. Whatley's carotid blockages were surgically accessible and that his overall physical condition would allow surgery to be performed on him. Mr. Whatley, himself, consented to these surgeries, approximately ten days apart. I personally assisted in the first of these surgeries and my residents in the second. Both were successful and Mr. Whatley has complete blood flow on both sides.

"Before these surgeries, the records show that Mr. Whatley suffered some mental lassitude as a result of the decreased blood flow. This lassitude was ameliorated with oxygen. Significantly, after the carotid surgeries, oxygen administration was and is no longer necessary and Mr. Whatley demonstrates mental faculties appropriate to a man his age who has, for almost a year, been quite ill.

*EXH. "A" 2 pp.*

"After the carotid surgeries, Mr. Whatley consented to a third surgery in which I removed from his right neck a nodular basal cell carcinoma in the operating room. Pathology report shows the margins free from tumor and reconstruction of the neck was successful. The prognosis on this matter is excellent with a six month followup with me.

"Having completed the carotid and neck surgeries, we next turned our attention to Mr. Whatley's need for post-surgical recovery, then physical rehabilitation of the year old leg fracture -- within his physical and age limitations and also, within the restrictions associated with his status as a Type II diabetic. Not surprisingly, Mr. Whatley's post-carotid improvements resulted in increased physical activity that caused a blister to develop on his right heel. Initially, he was seen for this at a satellite hospital. However, at that time, Dr. Garber, a first rank endocrinologist I wanted to attend to the diabetic problems that hamper full rehabilitation, was not taking any new patients. Further, in-hospital admissions at the Texas Medical Center in Houston are severely restricted due to the impact of Hurricane Katrina. Consequently, I recommended that Mr. Whatley be admitted to Deaconess Beth Israel Hospital in Boston because of its affiliation with the world renowned Joslin Diabetes Clinic. On Monday evening, September 12, 2005, I was finally able to communicate with Dr. Feinbloom at Beth Israel and he agreed to accept Mr. Whatley immediately as a direct admit. Since I had participated in Mr. Whatley's surgeries, observed and treated him under anesthesia, and have been his case manager, I was able to certify him as fit to travel and I instructed Mrs. Whatley to take him immediately to Boston. I understand that the satellite hospital in Channelview from which he was taken, Triumph Hospital, required a seventy-two hour advance notice to effect an inter-hospital transfer. Since I had independently certified Mr. Whatley as fit to travel by air without restriction, Mrs. Whatley removed him immediately from Triumph Hospital supposedly 'against medical advice.' That assertion will be seen to be in error. The intent here was not for an inter-hospital transfer, but instead, a discharge from Triumph and direct admit to Beth Israel.

"In my medical opinion, with my first-hand knowledge of Mr. Whatley's overall medical condition, it was in his best interest that his wife, Dawn Johnson Whatley, follow my medical advice to move him immediately by air to Deaconess Beth Israel Hospital in Boston because of its affiliation with the world renowned Joslin Diabetes Clinic."

AFFIANT SAYS NOTHING FURTHER.

_____
JOSEPH AGRIS, DDS, MD, FACS

SUBSCRIBED AND SWORN TO BY JOSEPH AGRIS, DDS, MD, FACS this 15th day of September, 2005, to certify which, witness below my hand and seal of office.

SEAL:



WILLIAM P ROGERS
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-18-2008

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF T E X A S