## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE:                                          §
                                                §
THE MATTER OF                                   §          NO. 05-CA-11881-PBS
                                                §
PERRY LEE WHATLEY                               §

## MOTION FOR A CONTINUANCE
## EXPEDITED CONSIDERATION REQUESTED

## AND REPLY TO ETHOS' MOTION AND "MEMORANDUM" OF LAW
## IN SUPPORT OF THE MOTION TO DISMISS THE COUNTERCLAIM
## AND ETHOS ATTEMPTS TO ALTER STATUS QUO

TO THE HONORABLE UNITED STATES DISTRICT COURT:

PERRY LEE WHATLEY, joined by DAWN JOHNSON WHATLEY, moves this Court to

continue the matter presently set for October 18, 2005 [Notice of Hearing, Docket # 39, October 14,

2005] since the two (2) Whatley requests presently set to be heard by the Court will both require an

evidentiary hearing.  Further, Docket # 39 contains a *First Amended Counterclaim with Additional*

*Persons* who have yet to file an answer; answer date is not until at least November 1, 2005.

In addition, after the Court's Friday, October 14 Notice of Hearing, on Saturday, October 15,

2005 Ethos' filed a 12(b)(6) *Motion to Dismiss the Counterclaim* [Docket #40, October 15, 2005]

a *Motion to Modify Orders of October 3, 2005* [Docket #41, October 15, 2005], and a *First*

*Addendum to Modify the Court's October 11 Order* [Docket #42 re #38, October 15, 2005].  None

of these intervening filings [## 40, 41, 42] contain a certificate of service.  Their PACER Exhibit

references are incorrect.  None have been set for hearing.

Finally, the United States Court of Appeals for the Fifth Circuit has instructed the Whatley

niece and nephew and U.S. District Judge Lynn Hughes to respond to the Whatleys' Application for

Writ of Mandamus that relates to a remand precipitated by *ex-parte* telephone calls to him from the

Wood defendant. The Court may wish to grant continuance on that ground alone.

Nevertheless, since the current parties have been ordered to appear on October 18, 2005, and since ## 40, 41, and 42 seek to change the *status quo*, the Whatleys, without waiver of their right to complain about violations of Rules 5 and 11, and lack of proper notice, are compelled to respond emergently to these matters that vitally affect Mr. Whatley.

They address the matters that effect *status quo* first, i.e. the on-going jurisdictional controversy, the inter-related motion to dismiss, then their own properly set matters, and finally, the actions of the Fifth Circuit.

## I. THE ON GOING JURISDICTIONAL CONTROVERSY

1.     If Ethos can demonstrate that the Texas Court had subject matter jurisdiction on September 29, 2005, and that the Whatleys were served with a citation and notice to appear on September 29, 2005, then Ethos may well prevail if it overcomes other obstacles, *infra*. On the other hand, if Ethos cannot show that these are the facts, Ethos loses. The Court's order of remand dated October 5th 2005 answers this question in part.[1]   The Court's Order of *Remand* (as compared to Ethos's proposed "Strike") implicitly acknowledges that the Texas removal required "remand," and thus, between the time of removal (divestiture of state court jurisdiction) and docketing of that remand in state court (reacquisition of state court jurisdiction), the Texas state court has no jurisdiction. Thus, the Texas state court was and is, as a matter of law, deprived of all jurisdiction over the parties and subject matter from September 29, 2005, up to the current moment.

2.     Turning first to divestiture, when, on October 13, 2005, defendant Wood held a new hearing in which he attempted to resuscitate his prior void Order and "reappoint" defendant Walker,

---

[1]   This order of remand was entered on a ground not authorized by statute as Orders of Remand entered based on a removal pursuant to section *1443* of Title 28, as is the case here, are reviewable by appeal or otherwise. *See* 28 U.S.C. §1447(d).

he too acknowledged jurisdictional divestiture on September 29, 2005. However, with respect to reacquisition, that has still not occurred.[2] Further, even assuming, *arguendo*, that the Texas state court had jurisdiction, due process was never achieved since Perry Whatley was never served with notice of the October 13 hearing and defendant Walker's appointment fails on adequate and independent grounds – jurisdiction and/or due process.

3.     SWBSSI itself has already conceded that the Orders entered on September 29th 2005, by defendant Mike Wood in State Court are void *ab initio*. In addition, the other defendants confirmed this fact as well when defendant Fuller, on behalf of Defendants Anderson and Robert Daniel Whatley filed a motion admitting the orders were void and asking defendant Wood to sign another Order "affirming" the void status of the Orders. Annexed hereto as Exhibit "A" is the Order signed by defendant Wood that "affirms" the voidness of his acts of September 29th 2005.[3]

4.     In addition, since defendant Wood has "ordered" his co-defendants Black and Walker to come to Boston shortly, then both should be available when the Court sets a hearing to allow the Whatleys to collaterally attack the Texas orders. Both can be cross-examined as to how a Court without subject matter jurisdiction can enter orders that supersede those of the Federal Courts. Both should be eager to tell this Court about their September 13, 2005 "secret" meeting in Mike Wood's

---

[2] Under Texas law, a Texas State Court never reacquires jurisdiction over a removed case until the clerk of the federal court mails to the clerk of the state court, a certified copy of the Order of Remand. 28 U.S.C. § 1447(c). Texas refuses to and will not recognize any other method of reinvesting jurisdiction in the state courts after a removal – following the lead of many of the Federal Circuit Courts to prevent exactly what is occurring here. *See Quaestor Investments v. The State of Chiapas*, 997 S.W.2d 226 (Tex. 1999). Thus, can Ethos present a certified copy from the Texas State Court clerk showing execution of the Order of Remand? The answer is no, and the clerk of the State Court has no such record.

[3] This order is a circular, jurisdictional, black-hole. The October 13 order proclaims the invalidity of its September 29 predecessor. Further, since the Whatleys were not served with notice of the October 13 hearing, that Order is void as well. The October 13 Order is also void under *Quaestor, supra*.

jury room when they contrived orders in a 1970's closed case file signed by Wood so that no one would know what they were doing.[4]

5.      SWBSSI is also bound by their judicial admissions made in their memorandum that Harris County, Texas, along with Defendant Wood, and Chouteau-Merrill had no subject matter jurisdiction on September 29th 2005, and all but fell on their own swords on October 5, 2005 by filing the Congressional certificate evincing a proceeding that took place in a Court with no jurisdiction.

6.      With respect to the congressional certificate and the void Order it certifies, SWBSSI now seeks to have Mr. Whatley forcibly returned to Texas.  Thus, the Order, yet to be domesticated, is ripe for review by this Court.  This filing [Docket #32], together with SWBSSI's motions to modify this Court's existing Orders [Docket ## 41, 42], is an attempt to domesticate and enforce a Foreign Order of Probate Court No.2 of Harris County, Texas by all the defendants.  This Order is open to collateral attack on the only two grounds recognized by both State and Federal law. With respect to the enforcement of a foreign order or judgment, a Federal court in Massachusetts sitting in diversity must be satisfied that ". . . (1) the foreign court had jurisdiction over the parties and the subject matter, and (2) the procedural and substantive law applied by the foreign court was reasonably comparable to that of the Commonwealth." *Schiereck v. Schiereck*, 14 Mass. App. Ct. 378, 380 (1982).  Thus, in the instant proceeding, the twofold question to be asked is: 1) Did the Texas Court have jurisdiction over the parties and the subject matter on September 29th 2005, and

---

[4]  The Whatley case number in Texas is 355,095. The Order to seize Perry Lee Whatley as admitted to by Ethos, was entered in case number 000049, a case closed in the 1970's.  The fraudulent documents used in 000049 were prepared by defendants Milholland and Wood in the company of "affiant" Ray Black.  Perhaps Ethos would attempt to proffer to the Court how that occurred so that the Court can inquire how Mr. Whatley's due process rights were being protected by Ethos's various and sundry acts.  This is part of the *corpus delicti* of the Whatleys' civil rights claims.

2) was the adverse party served with notice to attend as mandated by the law of the forum state. If either of these is lacking, the order cannot be enforced in this Commonwealth. As to 1, the Court can take judicial notice of its own orders and docket in which it remanded the removed case on October 5, 2005. Thus, the rendering Court did not have subject matter jurisdiction on September 29, 2005, and its orders are void. As to 2, there has been no showing in this record that Mr. and Mrs. Whatley were served with notice of the hearing for the either hearings. This re-notification is mandatory under both Texas and Massachusetts law. Thus, the domestication and enforcement fails on both fronts. Yet, even if item 2, notice, was accomplished, the domestication and enforcement fails on item 1, i.e., this Court's acknowledgment that a removal took place on the 29th of September 2005 by its Order of remand dated October 5, 2005 [Docket #30], coupled with *Quaestar, supra*. The newly crafted orders of October 13th 2005 which "affirm" the preceding void orders of September 29th 2005, are also void *ab initio. Hernandez v. De Aviacion*, 556 F.2d 611 (1st Cir. 1977)(holding that Massachusetts federal Court must apply Massachusetts state law when presented with a foreign judgment or order).

7.    Notwithstanding all the fraud and conspiracy in which Ethos has been involved with its co-defendants, Ethos apparently now attempts to distance itself from the co-defendants by claiming it was not a state actor or acting on behalf of state actors. The immensity of the record belies this assertion. Ethos had an obligation to investigate the claims and not continue to advance falsely the facts of the case, and to refrain from asking a Federal Court to ignore the legions of case law that with minimal investigation would have shown that Ethos' abuses were constitutional deprivations as a matter of law. When this Court asked Ethos is there "elder abuse" and Mr. O'Sullivan replied "NO," the case was over as to Ethos' direct claims, and Ethos should have bowed out. Instead, they continue to act as the conduit of Milholland, Black, and Wood as can be seen by

the Motion to Dismiss it appears to file on behalf of the entire group.[5]

8.    In spite of the facts and judicial admissions set forth above, Ethos's principal basis for 12(b)(6) dismissal is that it is not a state actor. The Court's attention is thus respectfully directed next to the motion to dismiss.

## II.  THE MOTION TO DISMISS

9.    In 1974, the Supreme Court held that there is no avenue of escape from the paramount authority of the Federal Constitution. "When there is a substantial showing that the exertion of state power has overridden private rights secured by that Constitution, the subject then becomes one for judicial inquiry in an appropriate proceeding directed against the individuals charged with the transgression." *Scheuer v. Rhodes,* 416 U.S. 232 (1974). In addition, the Supreme Court in *Scheuer* also held that all allegations in the Plaintiff's complaint must be taken as true. In order to defeat this law, Ethos bases its motion to dismiss on self serving statements that all of sudden they did not operate under color of state law. This assertion comes late in the day given the undeniable facts in

---

[5]   There are other a separate and independent ground to refuse recognition that perhaps SWBSSI would like to address in light of this Court's finding that Perry Lee Whatley is not being mistreated or is in danger. Understandably, at the last hearing, this Court pondered on the record that perhaps Judge Wood didn't understand what was going on. Yet, days later, Mike Wood "overruled" this Court after it made its finding that Perry Whatley was not in danger. Defendant Wood (without jurisdiction), then "found" that Perry Lee Whatley was in imminent danger, although this Court found otherwise. The difference between rulings is that this Court had evidence on which to make this finding, while Wood had none. In addition, defendant Wood is still under a mandatory recusal making any future Orders he signs also void as a matter of Texas Law. Thus, because the Court must look to see if the proper procedures were followed, the Whatleys direct the Court to a legion of Texas Authorities that hold that Mike Wood's Orders are wholly void. This is another separate and independent ground to refuse recognition to which perhaps SWBSSI would like to reply. *See Brosseau v. Ranzau,* 911 S.W.2d 890, 892 (Tex. App.--Beaumont 1995, no writ); *Metzger v. Sebek*, 892 S.W.2d 20, 49 (Tex.App.--Houston [1st Dist] writ denied); *Greenberg, Benson, Fisk & Felder v. Howell*, 685 S.W.2d 694, 695 (Tex. App.--Dallas 1984, orig. proceeding); *Dunn v. Street*, 938 S.W.2d 33, 35 (Tex. 1997); and Mercer v. Driver, 923 S.W.2d 656, 658 (Tex. App.--Houston [1st Dist.] orig. proceeding).

this record.[6] More significantly, Ethos statements that it is some type of private fiduciary, rather than a commissioned state actor, is an affront to this court in the face of the Commonwealth's enabling legislation, which provides, in pertinent part the following:

CHAPTER 19A. DEPARTMENT OF ELDER AFFAIRS

Chapter 19A: Section 16 Protective services system

(a)  Subject to appropriation, the department shall develop a coordinated system of protective services for elderly persons who are determined to be abused. In planning this system, the department shall require input from the department of social services, the existing protective service agencies and other agencies currently involved in the provision of social, health, legal, nutritional, and other services to the elderly, as well as elderly advocacy organizations.

(b)  Within this protective services system, the department shall establish a mechanism for the receipt of reports made pursuant to section fifteen which shall operate and be accessible on a twenty-four hour per day basis. If the department *or its designated agency* has reasonable cause to believe that an elderly person has died as a result of abuse, the death shall be reported immediately to the district attorney of the county in which the abuse occurred.  Within forty-five days of the receipt of a report made pursuant to subsection (a) of said section fifteen, the department or its designated agency shall notify the reporter, in writing, of its response to the report. Such notification shall be made to a person who makes a report pursuant to subsection ©) of said section fifteen if said reporter so requests.

*(c) Subject to appropriation, the department shall designate at least one local agency to act on behalf of the department with a geographic area as defined by the department. The department may designate any public agency or private nonprofit organization which has the capacity to implement a service plan through direct access to social, health and mental health services. The department shall utilize existing resources and services of public and nonprofit private agencies in providing protective services. The department shall insure that assessment, evaluation and service delivery shall be provided through the designated local agency closest to the elderly person's community.*

In designating agencies, the department shall insure that: (1) persons conducting

---

[6] Mr. O'Sullivan has taken an inconsistent position here.  When questioned by counsel on September 16, 2005, Mr. O'Sullivan stated that SWBSSI is a state actor and that indeed they operated under color of state law as he also informed others.  Thus, it is clear that as the irrefutable facts of the defendants misdeeds continue to come to light, the tune will continue to change, and not surprisingly, Mr. O'Sullivan will attempt to put more distance between himself and the others.

assessment, evaluation and service delivery have demonstrated experience in providing protective and other social health services to elders, have these protective functions as their primary employment responsibility, and have other professional qualifications as determined by the secretary; (2) continuity of care under one *protective services worker* is assured throughout assessment, evaluation and services delivery to the extent possible; and (3) the department and the designated agencies have the capacity to respond to an emergency and provide or arrange for services to alleviate the immediate danger of abuse of an elderly person on twenty-four hours per day basis.

The department shall monitor assessments, evaluations and the provision of protective services by designated local agencies.

(d) The department shall issue regulations establishing criteria and procedures for the designation of protective services agencies or for the termination or designation or redesignation of protective services agencies.

(e) The department shall be responsible for continuing coordination and supervision of the system. In carrying out these duties, the department shall, subject to appropriation: (1) adopt rules and regulations for the system; (2) continuously monitor the effectiveness of the system and perform evaluative research about it; and (3) utilize grants from federal, state and other public and private sources to support the system.

MASS. GEN. L. ch. 19A, § 16 (emphasis added). In the face of this legislation which, the Whatleys hasten to add, has the taxpayers paying Ethos's and Mr. O'Sullivan's salaries and fees, it is simply outrageous that Ethos and its counsel would stand before this Court and make such a claim.

10.     Moreover, the test is not whether or not Ethos is a state actor, the test is whether Ethos acted with the state party, i.e., defendants Wood, Chouteau-Merrill, and Milholland. In that regard, the Supreme Court held in 1992 that *anyone* who uses the State Court process to deprive another of a right secured under the Federal Constitution is not entitled to immunity, much less a dismissal from suit, even though the public official involved (state judge) may have immunity. Stated differently, even if every state court judge acted corruptly or maliciously with subject matter jurisdiction, this will not insulate the private party that used the State Court to effect the deprivation. The Court held that "[t]itle 42 U.S.C. § 1983 provides a cause of action against *every person* who,

under color of any statute of any state subjects, or causes to be subjected, any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wyatt v. Cole,* 504 U.S. 158, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992)(emphasis added). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id. citing Carey v. Piphus*, 435 U.S. 247, 254-257 (1978). Previously, in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), the Court had considered the scope of § 1983 liability in the context of garnishment, prejudgment attachment, and replevin statutes.[7] In that case, the Court held that *private parties* who attached a debtor's assets pursuant to a state attachment statute were subject to § 1983 liability if the statute was constitutionally infirm. Noting that "garnishment, prejudgment attachment, and replevin cases established that private use of state laws to secure property could constitute state action for purposes of the Fourteenth Amendment, (*id.*, at 932-935)," the Court held that *". . . private defendants* invoking a state-created attachment statute act under color of state law within the meaning of § 1983 if their actions are fairly attributable to the State." *Id.* at 937 (emphasis added). This requirement is satisfied, the Court held, if two conditions are met. First, ". . . the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* Second, "the private party must have acted together with or obtained significant aid from state officials or engaged in conduct otherwise chargeable to the State." *Id.* Significantly, the Court found § 1983 liability in *Lugar* because "the attachment scheme was created by the State and because the private defendants, in invoking the aid of state officials to attach the disputed property, were willful

---

[7] This is the case cited by Ethos that was affirmed by *Wyatt*. Again, another Rule 11 violation by citing law that is contrary to its holding.

participants in joint activity with the State or its agents." *Id*. at 941 (internal quotation marks omitted). Attachment, of course, is precisely one of the things engineered here by SWBSSI.

11.     In *Wyatt*, the District Court below, citing *Lugar*, had assumed that Cole, by invoking the state statute, had acted under color of state law within the meaning of § 1983, and was therefore liable for damages for the deprivation of Wyatt's due process rights.  With respect to the attorney involved (Robbins), the court noted that while an action taken by an attorney in representing a client does not normally constitute an act under color of state law ". . . an attorney is still a person who may conspire to act under color of state law in depriving another of secured rights." *Id.* at 13.  The District Court did not determine whether Robbins was liable, however, because it held that both Cole and Robbins were entitled to qualified immunity from suit at least for conduct prior to the statute's invalidation. *Id.*  at 13-14.  However, the Supreme Court in *Wyatt* extended the reach of *Lugar beyond qualified immunity.*  The *Wyatt* Court reversed the Fifth Circuit that had affirmed the district court and held that no private party is entitled to *any* immunity (qualified or otherwise) for mis-using the State Court process.

12.     Turning next to the substance of the Whatleys' 1983 counterclaim, the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  The Supreme Court has long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." *Washington v. Glucksberg*, 521 U. S. 702, 719 (1997).  Deprivation of "procedural due process" has been addressed in this case and need not be repeated here even though deprivation of procedural due process is part of the 1983 counter-claim.  Due process also includes a *substantive* component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id.* at 720; *see also Reno v. Flores*, 507 U. S. 292, 301-302 (1993).

13.     Significantly, in 2000, the Supreme Court  held that the use of the state Courts to interfere with familial liberty interests, similar to those pled here by the Whatleys, is an action under state law that the Court rectified under §1983.  *See Troxel v. Granville*, 530 U.S. 57 (2000).

14.     Turn next to evidentiary matters, it is well settled law that when a federal court passes on a motion to dismiss, all allegations in the complaint must be treated as true and in favor of the non-movant (the Whatleys).  As the Supreme Court has stated, "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Thus, we turn first to the substance of the Whatleys' civil right counterclaim.  Further, as Ethos finally concedes, it was the public officials in Harris County, Texas, specifically Valerie Milholland, an employee of  Harris County, Texas, and by no small coincidence, Mike Wood's lawyer as well, that interfered with those interests.  They contacted Ethos and locked down Mr. Perry Lee Whatley at the behest of Mike Wood.   A "secret" meeting took place in the jury room of Probate Court No.2, on September 13th 2005, at which Milholland, Black, Wood, Fuller and a Harris County, Texas legal assistant, Gloria Cruz, concocted the plan to allege elder abuse to force the Massachusetts State Courts into action.[8]  By no small surprise, these facts are omitted in the Black

---

[8] Ethos, on the record, has stated unequivocally in reply to this Court's inquiry that there is no elder abuse.  This judicial admission destroys Ethos' position and gives rise to the Whatleys' claims.  "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *accord Davis v. A.G. Edwards & Sons*, 823 F.2d 105, 108 (5th Cir. 1987); *Ferguson v. Neighborhood Housing Services*, 780 F.2d 549, 550-51 (6th Cir. 1986). *See Missouri Housing Development Commission v. Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990) (admissions in the pleadings are binding on the parties and may support a judgment against the party making such admissions).

affidavit. However, at evidentiary hearing, the best evidence will be Mr. Black himself.[9]    It is

abundantly clear that the Whatleys can and have presented enough facts to overcome any motions

to dismiss, as a Court's task in ruling on a motion to dismiss is to merely assess the legal feasability

of the complaint, not to assay the weight of the evidence which might be offered in support thereof.

*Official Commission of Unsecured Creditors v. Coopers & Lybrand* 332 F.3d. 147 (2nd Cir. 2003).

   15.    Ethos' motion also posits that Ray Black can by "affidavit" avoid the hearsay rule that

is inherent in all federal court proceedings; they  cannot.  Black cannot testify for someone else,

neither can Black prove up the authenticity of the documents to which that Ethos refers in footnote

after footnote.  As an example, Ethos states that Mike Wood was dismissed from a lawsuit based on

judicial immunity. This is a false statement in that the district judge in Texas specifically and

unequivocally stated that he was not dismissing Mike Wood.[10]  Still showing no shame or any fear

of lying to a federal Judge, Ethos next asserts, and again by Black affidavit, that Mrs. Whatley cashed

in a $500.000.00 annuity and gave it to her lawyers.  Again, another false statement made by Ethos

and by defendant Black.  Mrs. Whatley  is here, she has been at her husband's side from day one in

sickness and in health.  Compounding those false statements to a federal judge, Ethos then misleads

the Court, and again, by using the Black "affidavit" purportedly executed in Texas, but notarized in

North Carolina, posits that Judge Lynn N. Hughes remanded the removal from federal court to state

court on the merits. Omitted from this assertion is the directive of the United States Court of Appeals

---

[9]  The Texas Defendants have apparently allowed Mr. O'Sullivan to speak for them as this memorandum goes to the merits of the case against all of them. Thus, Mr. O' Sullivan needs to clarify if he is representing all the defendants, or is he trying to distance himself from them.

[10]    Defendant Wood was non-suited under Tex. R. Civ. P. 162 when the amended counterclaim was filed with this Court. This voluntary nonsuit is without prejudice and places him back in the same position he was in before suit was filed and without an adjudication on the merits. If Wood alleges judicial immunity, he must plead and prove it, as it is an affirmative defense.

for the Fifth Circuit that invites Judge Hughes to file a reply to the Whatleys' mandamus record that arguably demonstrates that defendant Mike Wood's ex-parte telephone calls to him on August 2, 2005 caused him to remand the case, *sua sponte*, on no legal grounds. Further compounding the falsity of the statements made therein, Ethos directs the Court to the Orders of September 29th 2005, rendered in Texas while omitting that Ethos admits that the Orders are void, as do the rest of the Defendants. On Page 8 of the Ethos pleading, Ethos again concedes that defendant Wood "affirmed" the invalidity of his September 29, 2005 Orders by entering them again without a hearing to appoint a temporary guardian, and without serving Mr. & Mrs. Whatley.[11]

16.    Therefore, based on the law and the facts, the 12(b)(6) motion should be denied.

III.    PENDING DECISION FROM A UNITED STATES CIRCUIT COURT

17.    As mentioned above, the Ethos' filing and the Black affidavit omits that on October 13, 2005, the United States Court of Appeals for the Fifth Circuit issued a directive to U.S. District Judge Lynn N. Hughes inviting him to file a reply in opposition as to why the Whatley's mandamus petition should not be granted. *See* Exhibit "B," annexed hereto and incorporated herein by reference in its entirety. This mandamus petition deals with the sole issue of why District Judge Hughes accepted an *ex-parte* telephone call from defendant Wood, removed the case from the docket of District Judge Lee H. Rosenthal to whom it had been assigned, and then, in violation of the statute and in contradiction to both Fifth Circuit and U.S. Supreme Court precedents, remanded a case on the "telephonic oral motion" of defendant Wood.[12]    Annexed hereto as Exhibit "C" and duly

---

[11]    "Litigants are under an obligation not to allege facts that have no evidentiary support." *Gonzalez v. Walgreens Co.*, 918 F.2d 303, 305 (1st Cir. 1990).

[12]    When this Court mentioned that the Whatleys had been "shot down"during  a previous removal attempt, counsel omitted informing the Court that defendant Mike Wood was doing the "shooting" that resulted in the "shot" being heard all the way to the 5th Circuit.

incorporated herein by reference is the petition that triggered the directive. These *ex-parte* telephone calls by defendant Wood to the Judges of various jurisdictions and forums have caught the attention of the Fifth Circuit once again, as they did in *United States v. Betty Jordan,* 49 F.3d.152 (5th Cir. 1995). In that case, the Fifth Circuit rebuked Wood by striking his so-called "amicus" brief, reversed the sentence of the defendant, and remanded the case to another state to keep Mike Wood away from the proceedings.[13] Thus, it is a legitimate request that the Whatleys make: that this Court not allow defendant Wood telephonically to co-opt this Court and stain its reputation, thereby shrouding the proceedings in controversy. The Court can enter this Order *sua sponte* by directing that Wood and/or anyone acting in his stead place no more *ex-parte* calls to this Court. This should not require a hearing in light of the fact that the Court disclosed the call that Wood made, unlike the other Judges who did not disclose which required intensive investigation.[14] Thus, as the 5th Circuit's opinion in this matter will be handed down shortly, it will affect how this case should at least proceed procedurally. To be sure, it is no small feat to have the Fifth Circuit even contemplate mandamus relief, much less invite the district Judge to explain why he allowed Mike Wood to call him and make an ex-parte "motion to remand."

18. The pendency a of ruling from the Fifth Circuit constitutes an adequate and independent basis for a continuance.

---

[13] This defendant, Mike Wood, knows no boundaries in that in a federal criminal case there are only two parties; the Government on one side, and the defendant on the other. Defendant Wood filed a brief in a federal appeals court while sitting as a state judge – announcing that he was a good "Christian Judge" (whatever that means), on which basis he then told the Fifth Circuit that they (the Fifth Circuit) " had it all wrong" and that an outrageous 300 month pre-guidelines sentence for a first time "white collar" defendant was the right sentence. He omitted that years earlier he had physically assaulted that same defendant who then had him arrested and placed in the Harris County Jail.

[14] Again, the Whatleys thank the Court for disclosing the call as it could have remained silent and done as defendant Wood requested.

IV.  THE RIGHT TO BE HEARD

19.    The next matter that supports continuance is this.  Newly joined defendants have the

right to be heard before being enjoined as the injunction will affect their rights before this Court.

Unless all of them waive personal appearance, or designate Mr. O' Sullivan as their counsel, as they

have done in the past, the short notice will be grounds for a reversal in that although each defendant

was served electronically with the application for a preliminary injunction, each defendants answer

due date has not expired.  Thus, the hearing should be continued to allow each individual defendant

to make an informed decision as to whether or not they will opposed this injunctive relief that stands

on "all fours" with the statutes and the decisions of the First Circuit, Fifth Circuit, and the United

States Supreme Court.  In addition, and again, not making bald assertions to this Court, the Whatleys

tender Exhibit "D," attached and incorporated by reference.  It is an excerpt of the void proceedings

of September 29,  2005 in which defendant Wood boldly proclaims that the Chouteau-Merrill

defendant acknowledges that she has no jurisdiction, but that despite the Orders of Judge Gorton and

this Court, she will force Perry Lee Whatley out of the Commonwealth by directing that law

enforcement take Mr. Whatley to the airport.[15]  Thus, despite the representations of Mr. O'Sullivan

that none of this was taking place, it was indeed going on with full force in violation of the due

process clause and the standing orders of this Court.

20.    A continuance will allow the Whatleys to develop this matter further and thus, should

be granted.

V.  THE OCTOBER 11TH ORDER

21.    Pending for the October 18 hearing is counsels' concerns regarding the Court's

---

[15]  This is an utter outrage and an affront to Art VI. Sec 2 of the Constitution that merits that
both judges be removed from office.

statement that they filed a pleading "not in good faith," i.e., in bad faith. This matter can wait until the all evidence is in and the Court is briefed with relevant case law. Counsel will demonstrate to this Court that their decision was sound, based on good solid law, and that they did not, and will never file a pleading in bad faith. In fact, the First and Fifth Circuits have discussed the positions taken by counsel and by published opinions guided their decisions no matter how unpopular they may be to the Wood defendants and parties. *See S.W.S. Erectors v. Infax* 72 F.3d. 489 (5th Cir. 1996*) and Autoridad De Energia Electricia De Puerto Rico v. Ericsson Inc.*, 201 F.3d 15 (1st Cir. 2000)( holding that  A:  multiple removals are permissible and that removal to the wrong district does not go to the Court's jurisdiction, and B: remand orders based on successive and subsequent removals are reviewable on direct appeal). It cannot be overemphasized that the Whatleys did not commence any judicial proceedings in the Commonwealth; it was SWBSSI and their counsel, acting at the direction of defendant Milholland, and her client, defendant Wood, who initiated this action in a Massachusetts state court, replete with false statements of fact, *ex-parte* telephone calls, all of which has now resulted in this constitutional crisis. Nevertheless, counsels' reputations are less important than medical care for Perry Whatley.[16]

VI. <u>ORDERS IN PLACE</u>

22.    This Court's orders which are in place are sufficient to protect all parties until such time  as the defendants can file their answers. However, it appears that the defendants intend to ignore and violate this Court's Orders to the detriment of the Whatleys, for which they will have no legal remedy. Thus, the Court needs to make it clear to all of the defendants that this Court's

---

[16]  Defendant, Jimmy Walker has, by his telephone calls to Mr. Whatley's nursing home, effectively imprisoned Mr. Whatley in his bed by ordering that Mr. Whatley's wheelchair be removed and that Mr. Whatley be refused access to it. He has further ordered that Mr. Whatley be denied access to New England Baptist Hospital.-

telephone is off limits in *ex-parte* fashion, and that Mr. Whatley can remain in the Commonwealth receiving medical treatment and can, as a matter of law, reside in any of the 50 states of the Union, its Possessions and/or territories without the permission of SWBSSI, its counsel, or these Defendants. Further, if any of the defendants seek to hold proceedings against a citizen of the Commonwealth, he is entitled to notice, the opportunity to object, and then, and only then, can the defendants attempt to "domesticate" any orders from Texas before trying to enforce the so that the Whatleys can collaterally attack them under the domestication clause of the Fourteenth Amendment. By admitting that the orders of September 29, 2005 are void, something each defendant has judicially admitted to this Court in their filings through SWBSSI, there is no valid and domesticated order currently in place.

## VII. CONCLUSION

23.    The relief being sought by the Whatleys is simple and straightforward, that being:

A.    That no forced extradition of the Whatleys from the Commonwealth be allowed;

B.    That non-medical professionals, i.e. lawyers, stop interfering with Mr. Whatley's medical treatment (based on void orders, *see* n. 16, *supra*);

C.    That no more *ex-parte* telephone calls to the Court be allowed; and,

D.    That the Court's finding of bad faith against counsel in a filing be vacated.

24.    Accordingly, and in the interim, the Whatleys ask the Court to continue the matter until such time all the parties can file written answers to the application, appear, and evidence can be taken while leaving in place the Orders that Mr. Whatley not be disturbed, "deported" or denied medical treatment, as this is the law of the land. Given the state of the record and the insurmountable opinions of the Supreme Court of the United States, and the First Circuit, the proposed injunction

is a necessity to preserve the status quo until such time the Court can rule on the motion for summary

judgment being prepared post haste.

Respectfully submitted,                    Respectfully submitted,

PERRY LEE WHATLEY,                    DAWN JOHNSON WHATLEY,


By: /s/ Susan B. Norman                    /s/ Daniel J. Shea
    SUSAN B. NORMAN                    DANIEL J. SHEA
    Texas Bar No. 15083020                    Mass. B.B.O. # 652896
    LAW OFFICE OF SUSAN B. NORMAN                    DANIEL J. SHEA, P.C.
    9135 Katy Fwy., Suite 100                    1928 West Bell Street
    Houston, TX 77024                    Houston, TX 77019-4814
    (713) 465-3344                    (713) 942-7500
    (713) 468-6243 Telecopier                    (713) 942-7507 Telecopier
    *PRO HAC VICE* (PENDING)

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing *Motion for Continuance With Expedited Consideration Requested et al.* was served pursuant to FED. R. CIV. P. 5 on the 17th day of October 2005 to the individuals and in the manner indicated below:

Mr. James M. O'Sullivan                    Electronic Delivery From Houston
O'SULLIVAN & ASSOCIATES, P.C.
17 Accord Park Drive, Suite 104
Norwell, MA 02061-0000
ATTORNEY FOR SOUTHWEST
BOSTON SENIOR SERVICES, INC.



/s/ Daniel J. Shea

10/14/05  10:15 FAX 713 750 8540    HINKON HALL CLERK LAW    713 468 6243    To:7137718653    @002    P.4/9



256787

NO. 355,095

IN RE:  GUARDIANSHIP OF

THE PERSON AND ESTATE OF

PERRY LEE WHATLEY,

AN INCAPACITATED PERSON

§
§
§
§
§
§
§
§

IN PROBATE COURT NO. 2

OF

HARRIS COUNTY, TEXAS

**ORDER AFFIRMING APPOINTMENT OF TEMPORARY GUARDIAN
OF THE PERSON AND ESTATE PENDING CONTEST
PURSUANT TO SECTION 875K OF THE TEXAS PROBATE CODE**

Pending before this Court is Robert Daniel Whatley's and Jeanie Anderson's ("Applicants") Motion to Affirm Order Appointing Temporary Guardian of the Person and Estate Pending Contest, and the Court finding that an Application for the appointment of guardian for Perry Lee Whatley ("Proposed Ward") is pending in this matter and a contest to this Application has been filed and is also pending, and after reviewing the pleadings, the evidence and arguments presented at the various hearings to date, the Court hereby affirms its Order Appointing Temporary Guardian of the Person and Estate Pending Contest dated September 29, 2005, and hereby ratifies and affirms all actions taken by the Temporary Guardian pursuant to his Order of appointment; and makes the following findings: (i) a contest to the Application for the Appointment of a Guardian of the Person and Estate of Perry Lee Whatley has been filed, (ii) the appointment of a temporary guardian is necessary to protect the Proposed Ward and his estate, (iii) there is imminent danger that the physical health and safety of the Proposed Ward will be seriously impaired, and/or that the Proposed Ward's estate will be seriously damaged or dissipated unless a temporary guardian of the Proposed Ward's person and estate is appointed, (iv) this Court has jurisdiction and venue over the parties, the

A CERTIFIED COPY.

ATTEST:  OCT 6 2005

BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
NADIA D. CAMPBELL

RESPONDENT'S
EXHIBIT
A

10/14/05  10:15 FAX 713 739 9918   LUSKINS KELLY DEPOT LARR   To:7137718653   P.5/9

Proposed Ward and his estate, and (v) it would be in the Proposed Ward's best interest to appoint a temporary guardian of his person and estate pending contest, pursuant to Section 875(k) of the Texas Probate Code. It is, therefore;

ORDERED that Jimmy Walker, an attorney licensed to practice in the State of Texas, is hereby appointed as Temporary Guardian of the Person and Estate of Perry Lee Whatley, Pending Contest, pursuant to Section 875(k) of the Texas Probate Code ("Temporary Guardian") and that Certificates of Appointment of Temporary Guardian of the Person and Estate Pending Contest shall issue accordingly upon the Temporary Guardian posting a bond in the sum of $ 2,500,000 and taking the Oath as required by law; It is further,

ORDERED that all Powers of Attorneys executed by the Proposed Ward are hereby suspended and shall be of no force and effect, and the Temporary Guardian shall have the following powers, subject to further orders of the Court as required by the Texas Probate Code:

1.   To take physical possession, charge and custody of the Proposed Ward, and to establish his residence;

2.   To relocate the Proposed Ward from his current location, regardless of where he may be found, to Harris County, Texas;

3.   To make residential placement and care decisions for the Proposed Ward;

4.   To obtain any and all necessary dental, mental, physical and/or medical care, and to consent to necessary medical procedures, including surgery on behalf of the Proposed Ward;

2

A CERTIFIED COPY
ATTEST:        OCT 14 2005
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

NADIA D. CAMPBELL                Deputy

From: SUSAN G NORMAN      713 469 6243      To: 7137718653      P.6/9
10/13/05 10:11 FAX 713 780 0519      BINKINS KELLY LENOX LAMB                @on4

5. To obtain any and all medical records of the Proposed Ward, including any records of medical care or treatment protected under HIPAA Regulations, and any Health Care Organization or Physician presented with a copy of this Order shall provide the Temporary Guardian access to the Proposed Ward's Protected Health Information, including, but not limited to, medical records, psychological records and intellectual testing records that are dated within the last twelve (12) months from the date of this Order and up to and including Protected Health Information to the date this Order is presented;

6. To intervene and substitute in as a party to in any lawsuit concerning the Proposed Ward and/or the assets of his Estate, and to take such action as the facts of the case warrant;

7. To collect and protect all real and personal property of the Proposed Ward's Estate;

8. To contract and incur obligations on behalf of the Proposed Ward;

9. To employ accountants, appraisers, attorneys and other persons necessary in the administration of the Estate and in the preparation and filing of any tax returns required to be filed by the Estate and to file and sign such tax returns and, if necessary, apply for an extension of time to file same;

10. To make investigations reasonably necessary to determine the nature and extent of the Proposed Ward's property and claims;

11. To pursue and collect claims on behalf of the Proposed Ward, including initiating legal actions or suits in order to collect any such claims;

12. To receive any monies, payments, rents, dividends, interest, trust proceeds, and any and all other types of income payable to or receivable by the Proposed Ward;

13. To pay all bills, including insurance premiums, and make any and all reasonable and necessary expenditures from the guardianship Estate, for the benefit of the Proposed Ward;

14. To take possession and control of Proposed Ward's assets, both real and personal, including any and all books, records, personal identification instruments, account statements, documents, and instruments necessary for preparation and filing of income tax returns for the Proposed Ward.

3

A CERTIFIED COPY
ATTEST:       OCT 13 2005
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

_____ Deputy
NADIA D. CAMPBELL

FROM : RICHALLANFAX001                              FAX NO. : 7137718653                              Oct. 13 2005 08:15AM  P3


10/11 '05  10:18 FAX 713 739 8549     713 468 6243     To:7137718653     P.7/9

15.  To take possession of all cash on hand or on deposit belonging to the Proposed Ward or any business of the Proposed Ward, and to open new accounts and to be the authorized signatory on such accounts;

16.  To take possession, charge and control of any and all financial resources of the Proposed Ward, including, but not limited to any bank accounts, brokerage accounts and annuities;

17.  To have access to any safe deposit box maintained by the Proposed Ward and to take possession of the contents of any safe deposit box;

18.  To revoke any Durable Power of Attorney or Power of Attorney executed by the Proposed Ward, or any act taken by the holder of any Power of Attorney executed by the Proposed Ward;

19.  To investigate the validity of any action allegedly taken by the Proposed Ward and take such action as is necessary to set aside the acts of the Proposed Ward at any time he may have lacked the legal capacity to do such acts; and

20.  To do such other and further acts concerning the property and interests of the Proposed Ward and his Estate as the Court may from time to time direct; it is further

ORDERED that the Temporary Guardian and the Attorney Ad Litem, Ray Black, Jr. shall travel to the location of the Proposed Ward's current whereabouts, and shall take possession of the Proposed Ward and relocate him to Harris County, Texas; it is further,

ORDERED that the term of the Temporary Guardian of the Person and Estate Pending Contest shall expire at the conclusion of the hearing challenging or contesting the application or on the date the Court appoints a permanent guardian for Proposed Ward, it is further,

4

A CERTIFIED COPY

ATTEST:       OCT 1 3 2005
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas,

_____ Deputy
NADIA D. CAMPBELL



ORDERED that any person or entity interfering with the relocation of the
Proposed Ward to Harris County, Texas, or any other action by the Temporary Guardian,
shall be subject to contempt proceedings.

SIGNED this **13** day of ___**OCTOBER**___, 2005.

PRESIDING JUDGE

A CERTIFIED COPY
OCT 1 3 2005
ATTEST:
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

NADIA D CAMPBELL

| IN MATTERS OF PROBATE | § | |
| PROBATE COURT NO. 2 | § | DOCKET NO.  355,098 |
| | § | STYLE OF |
| HARRIS COUNTY, TEXAS | § | DOCKET:    PERRY LEE WHATLEY |
| | | INCAPACITATED |

## CERTIFICATE OF APPOINTMENT AFFIRMING APPOINTMENT OF TEMPORARY GUARDIAN OF THE PERSON AND ESTATE PENDING CONTEST

ON OCTOBER 13, 2005, JIMMY WALKER, WAS APPOINTED TEMPORARY GUARDIAN OF THE PERSON AND ESTATE OF PERRY LEE WHATLEY, INCAPACITATED. THE GUARDIAN QUALIFIED ACCORDING TO LAW ON OCTOBER 13, 2005.

GIVEN UNDER MY HAND AND SEAL OF COURT, AT HOUSTON, TEXAS ON OCTOBER 13, 2005.

(SEAL)

BEVERLY B. KAUFMAN, CLERK
PROBATE COURT NO. 2
HARRIS COUNTY, TEXAS

ANGEL D. LEWIS
DEPUTY COUNTY CLERK

NO. 31391/ADL

P. O. BOX 1525 • HOUSTON, TEXAS 77251-1525 • (713) 755-6425

A CERTIFIED COPY
ATTEST:    OCT 1 3 2005
BEVERLY B. KAUFMAN, County Clerk
Harris County, Texas

NADIA D. CAMPBELL    Deputy

## United States Court of Appeals

FIFTH CIRCUIT
OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

TEMP. U.S.P.S. ADDRESS:  P.O. BOX 610160
HOUSTON, TX 77208
COMMERCIAL DELIVERY: ROOM 1216, 515 RUSK ST.
HOUSTON, TX 77002

TEL. 504-310-7700
600 CAMP STREET
NEW ORLEANS, LA 70130

October 13, 2005

Mr Roy L Fuller
1300 Rollingbrook, Ste. 608
Baytown, TX 77521-3863

Judge Lynn N. Hughes
United States District Judge
515 Rusk Ave., 11th Floor
Houston, TX 77002

No. 05-20774 In Re: Whatley
USDC No. 4:05-CV-2663

By directive of the Court, you are invited to respond to the petition for writ of mandamus filed by Dawn Johnson Whatley and Perry Lee Whatley. Any response should be filed within three (3) business days from this date or by not later than October 18, 2005. You have the option of mailing or emailing your response to me at amanda_sutton@ca5.uscourts.gov.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: *Amanda Maria Sutton*

Amanda Maria Sutton, Deputy Clerk
713-250-5440

cc:  Mr Peter John Riga

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DAWN JOHNSON AND PERRY** | | |
| **LEE  WHATLEY,** | § | **C. O. A. # 05-20774** |
| | § | |
| Petitioners | § | |

---

## ON PETITION FOR WRIT OF MANDAMUS
## TO THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

---

## PETITION FOR WRIT OF MANDAMUS
*Lynn N. Hughes, United States District Judge*
U.S. D.C. # 05-CV-2663
*Assigned to the Honorable Lee H. Rosenthal, United States District Judge*

---

PETER J. RIGA
8700 COMMERCE PARK DRIVE
SUITE 116
HOUSTON, TEXAS 77036
713-771-8494
713-771-8653 (FAX)
SBOT 16915900
PeterRiga@msn.com
www.RigaLaw.com
ATTORNEY FOR PETITIONERS

## TABLE OF CONTENTS

Style and Number of the Case.................................................................................  1

Table of Contents............................................................................................  2

Statement Regarding Oral Argument.......................................................................  4

Statement of Interested Parties.............................................................................  4

Standard of Review..........................................................................................  5

Statement of Jurisdiction...................................................................................  6

Cases and Statutes...........................................................................................  3

Disposition of the Case Below and Chronological Background Facts............................  5

Issue Presented and Summary of the Argument ....................................................  7-8

Conclusion...................................................................................................  10

Prayer.........................................................................................................  11

Certificate of Service.......................................................................................  11

**INDEX OF CASES**:

1.  *Smith v. Texas Children's Hospital*, 84 F. 3d. 152 (5th Cir. 1996)........................  6

2.  *United States v. Betty Jordan*, 49 F.3d 152 (5th Cir. 1995)..................................  6

3.  *In Re: Allstate Insurance Co.*, 8 F.3d. 219 (5th Cir. 1993)..............................  7,8,910

4.  *Thermtron Prods. v. Hermansdorfer*, 423 U.S. 336 (1976)...............................  7,10

5.  *In Re: Shell Oil Co.*, 932 F.2d. 1518 (5th Cir. 1991)..............................................  8,9

6.  *FDIC v Lloyd 955* F.2d. 316 (5TH Cir. 1992).................................................7

7.  *Schwinn Bicycle Co. v. Brown,* 535 F. Supp. 486 (W.D. Ark 1982)...................  9

8.  *Hubbard v. Tripp*, 611 F. Supp. 895 (E.D. Va. 1985)...........................................  9

9.  *Baris v. Sulpico Lines*, 932 F.2d. 1540 (5th Cir. 1991).........................................  9

10. *Ziegler v. Champion Mortgage Co.*, 913 F.2d. 228 (5th Cir 1990)......................  10

**STATUTES AND RULES**

1.  28 U.S.C. § 1443(1)(2)....................................................................................  5

2.  28 U.S.C. § 1446(a).........................................................................................  7

3.  28 U.S.C. § 1447(d).........................................................................................  7,8

4.  28 U.S.C. § 1447(c)..................................................................... ............  8,9,10

**STATEMENT REGARDING ORAL ARGUMENT**

The undersigned Counsel believes that Oral Argument would not assist the panel as the law in this area is so well settled that oral argument would add nothing to the merits of the petition.

**STATEMENT OF INTERESTED PARTIES**

The following parties and lawyers have an interest in the outcome of this appeal. This representation is made so that the Court can evaluate any possible recusal.

Mr. Daniel J. Shea
DANIEL J. SHEA, P.C.
1928 West Bell Street
Houston, TX 77019-4814
(713) 942-7500
(713) 942-7507 Facsimile
ATTORNEY FOR PETITIONER
DAWN JOHNSON WHATLEY

Ms. Susan C. Norman
LAW OFFICES OF SUSAN C. NORMAN
9135 Katy Freeway, Suite 100
Houston, TX 77024-1636
(713) 465–4344
(713) 468-6243 Facsimile
ATTORNEY FOR CO-PETITIONER
PERRY LEE WHATLEY

Mr. Roy L. Fuller
1300 Rollingbrook, Suite 608
Baytown, TX 77521-3863
(281) 422-3555
(281) 427-9564 Facsimile
ATTORNEY FOR RESPONDENTS
ROBERT DANIEL
WHATLEY AND JEANIE ANDERSON

Mr. Ray Black, Jr.
LAW OFFICES OF RAY J. BLACK, JR.
One Riverway, Suite 1700
Houston, TX 77056-1997
(713) 840-1955
(713)  (713) 840-1820 Facsimile
ATTORNEY *AD LITEM* FOR
PERRY LEE WHATLEY

The Honorable Lynn N. Hughes
United States District Judge
515 Rusk Ave. 11th Floor
Houston, Texas 77002
713-250-5600
RESPONDENT
DISTRICT COURT

**STANDARD OF REVIEW**

The standard of review in the instant petition is a non discretionary and ministerial duty on the part of the District Court, amounting to an abuse of discretion.

**TO THE HONORABLE JUDGES OF THE  COURT:**

Comes now Dawn Johnson Whatley, joined by Perry Lee Whatley, who files this their *Petition for Writ of Mandamus* and in support they  would show as follows:

**DISPOSITION OF THE CASE AND CHRONOLOGICAL BACKGROUND**

1.      This is a petition to the United States District Court's (Hughes, Lynn; J.) final order remanding, *sua sponte*, ( after a telephone call) a removed case. (RE: Vol. I. -3).[1]

2.      Prior to this *sua sponte* remand, the Whatleys,  removed the case from the Harris County Probate Court No. 2 on August 3rd 2005,  *citing* 28 U.S.C. § 1446(a), 28 U.S.C. § 1443, (1) (2).  (RE: Vol. I.- 1 ).

3.      On August 3, 2005, the District Court, within an hour after the removal, convened a telephonic hearing to address the removal without a motion from any of the parties. (RE: Vol. I. 4 ).   The District Court did not disclose that the State Court Judge had telephoned him to urge remand.  In addition, since the Ancillary/Emergency Judge was the Honorable Keith P. Ellison, Petitioners were surprised that the District Court, Judge Hughes, had taken the case from Judge Lee H. Rosenthal's docket where it had been randomly assigned, and then remanded it without a motion after finding that it had jurisdiction over the case and the parties.

4.      Inasmuch there was no motion to remand filed by any of the parties, Petitioners could not develop a record for this Court, but did object to the remand, the improper telephone call, and

---

[1] All references to the record will be designated RE: "Record Excerpts."

the District Court's action in taking the case off Judge Rosenthal's docket, and then remanding it, while pointing out that the District Court had no discretion to remand a case that arises from federal law and the statute cited. *Smith v Texas Children's Hospital,* 84 F.3d. 152 (5th Cir. 1996) . (RE: Vol. I.-4 ).[2]

5.     Petitioners on August 26, 2005, gave *Notice of Appeal* and *Notice of Intent to Seek Mandamus Relief* from this Court. (RE: Vol. I. - 7).  Thus, this Court has jurisdiction to review the Order by mandamus.

## STATEMENT OF JURISDICTION

6.     Before the Court can reach any of these issues it must have jurisdiction. This Court has the authority and jurisdiction to issue writs of mandamus.

## ISSUE PRESENTED

**_____This petition for writ of mandamus presents the issue this Court expressly reserved in *FDIC v. Loyd*, 955 F.2d 316, 321 n.4 (5th Cir. 1992), but subsequently answered in Allstate 8 F.3d. 219 (5th Cir. 1993),  to wit: whether**

---

[2]  The State Court Judge, Mike Wood, a personal friend of Judge Hughes, telephoned him despite the impropriety of such a call urging Judge Hughes to take the case off Judge Rosenthal's docket and then remand it.  When questioned by trial counsel, Judge Hughes' explained  that the Judges in the Southern District "encourage" this type of call in the absence of the parties or a motion by the parties.  This impropriety appears to rewrite the removal statute, and overrules all the opinions of this Court and the Supreme Court as well.  Given Judge Hughes' reasoning, Congress should simply repeal the removal statute, and this Court as well as the Supreme Court should vacate the authorities cited herein since the state court judges can now simply pick up the telephone, by-pass this Court's mandates, and rewrite the removal statute.  This is the  self-same  Mike Wood that filed a "brief" in this Court during a criminal case, while a sitting state judge, that led this Court to vacate a criminal sentence and send the case outside of the Southern District for re-sentencing of the defendant based on his perceived influence over another district Judge in the Southern District of Texas.  *See United States v. Betty Jordan*, 49 F.3d 152 (5th Cir. 1995). The telephone call was improper, and Respondents pray, *inter alia*, that this Court's action prevent a recurrence of such conduct.

**the federal removal statute, 28 U.S.C. §§ 1441 et seq., permits a district court to remand a case sua sponte for a "defect in removal procedure" where the remand occurs within the thirty-day period allowed by §§ 1447(c) for motions to remand.**

## SUMMARY OF THE ARGUMENT

7.      It is well settled law in this Circuit that [a] federal court does not possess the discretion, *sua sponte*, to remand a case removed from State Court.  *In Re: Allstate Insurance Co.,* 8 F.3d 219 (5th Cir. 1993).   In *Allstate*, this Court defined the meaning of motion to remand, and the ability of the federal trial court to act after removal.  *Allstate* first addressed whether this Court had jurisdiction to review the district court's order.

> We first address whether we have jurisdiction to review the district court's order. Our authority to review a remand order is severely circumscribed by 28 U.S.C. §§ 1447 (d), which provides, in pertinent part, that "an order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ." Despite the broad sweep of the statute, the Court in *Thermtron Prods. v. Hermansdorfer*, 423 U.S. 336, 345-46, 46 L. Ed. 2d 542, 96 S. Ct. 584 (1976), limited its purview by holding that "only remand orders issued under §§ 1447(c) and invoking the grounds specified therein . . . are immune from review under §§ 1447(d)." The Court concluded that mandamus is an appropriate remedy "where the district court has refused to adjudicate a case, and has remanded it on grounds not authorized by the removal statutes." Id. at 353.
>
> We may review a remand order on petition for writ of mandamus, therefore, provided that it was entered on grounds not authorized by §§ 1447(c). As we explain in greater detail below, the district court acted without statutory authority when it sua sponte remanded the case on procedural grounds. *Consequently, §§ 1447(d) poses no bar to our review. Allstate*, 8 F.3d 219 (emphasis added)(footnote omitted).

8.      In the instant case, the district court remanded on a ground not authorized by statute. Indeed, the court went so far as to explicitly assert its subject matter jurisdiction.  (RE: Vol. I- 4,@ pg. 22 line 13).  This, this court must once again turn to the issue it reserved in Lloyd, but answered

in Allstate to wit: whether the federal removal statute, 28 U.S.C. §§ 1441 et seq., permits a district court to remand a case *sua sponte* for a "defect in removal procedure" where the remand occurs within the thirty-day period allowed by §§ 1447(c) for motions to remand.

9.    <u>Grounds not authorized by §§ 1447(c).</u>

Having decided that there was no bar to its review, Allstate proceeded to address the Lloyd issue that squarely appears in this case.

> As amended by the Judicial Improvements and Access to Justice Act of 1988, Pub. L. No. 100-702, 102 Stat. 4644, 4670, §§ 1447(c) states, in pertinent part,
>
> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C. §§ 1447(d) (Supp. 1993).
>
> In the recent cases of *In re Shell Oil Co.*, 932 F.2d 1518, 1519 (5th Cir. 1991), *cert. denied*, 116 L. Ed. 2d 814, 112 S. Ct. 914 (1992), and Loyd, we granted the petitions for writs of mandamus and directed the district courts to vacate their remand orders, respectively, where the court had granted a motion to remand for a defect in removal procedure made outside §§ 1447(c)'s thirty-day limit, and where the court *sua sponte* had entered an untimely order on the same ground.
>
> Here, the district court remanded *on the same day* Allstate filed its notice of removal, explaining that "[Allstate] has failed to adequately plead Plaintiff's residence at the time of filing of the original petition. Thus, [Allstate] has failed to properly remove this case, and this case must be remanded." Plainly, the district court's order was nothing if not timely; the question that concerns us is whether it was made in response to a defect in removal procedure, and, if so, whether §§ 1447(c) authorizes a court's *sua sponte* remand on such grounds. *(Allstate)*

The facts in Allstate coincide with the facts here.  The remand was effected *sua sponte* the same day as the removal.  The question then becomes whether the defect that prompted *sua sponte* remand was one of jurisdiction or procedure.  In that regard, it is important to keep in mind that this is a narrow issue of *sua sponte* remand as compared to a remand made upon a motion of one of the

-8-

removed parties.

> Although it is "well settled that a removing party must allege diversity both at the time of the filing of the suit in state court and at the time of removal," *Schwinn Bicycle Co. v. Brown*, 535 F. Supp. 486, 487 (W.D. Ark. 1982); *Hubbard v. Tripp*, 611 F. Supp. 895, 896 (E.D. Va. 1985), a "procedural defect" within the meaning of §§ 1447(c) refers to "any defect that does not go to the question of whether the case originally could have been brought in federal district court . . . ." *Baris v. Sulpicio Lines*, 932 F.2d 1540, 1544 (5th Cir.), *cert. denied*, 116 L. Ed. 2d 449, 112 S. Ct. 430 (1991); see also Shell, 932 F.2d at 1522 ("'Any defect in removal procedure' includes all non-jurisdictional defects existing at the time of removal."). By this standard, Allstate's failure to allege, in its notice of removal, the plaintiff's citizenship at the time the original petition was filed constitutes a procedural, rather than jurisdictional, defect; although Allstate failed conclusively to demonstrate diversity, the record discloses no dispute that it in fact existed. *Allstate*, 8 F.3d 219 (emphasis added) (footnote omitted).

Here, the analysis narrows.   In Allstate, the removing parties did not fail to allege grounds for removal based on "diversity."   In this case, the removing parties did not fail to allege "federal question" grounds and indeed, the district court explicitly stated that the Court had jurisdiction over the *case*.   Instead, the district court *sua sponte* remanded on grounds that the removal was "meretricious."

10.    <u>Grounds Not Authorized:  Meretricious Removal</u>

At this point of the *Allstate* analysis, it might otherwise appear that "meretricious" falls within the Scylla and Charbdis of subject matter and diversity.  The United States Supreme Court comes to the rescue in that regard – as ultimately noted by this Court in *Allstate*.  But first, by process of elimination, it should not go unnoticed that the remand, whatever its nature, was not initiated by the parties but by the district court  coaxing the respondents.  "Considering a motion to remand is both procedurally and substantively different from inquiring into the existence of subject matter jurisdiction. Procedurally, a court may consider remand *only if the parties raise the issue*;

conversely, a court must consider the existence of subject matter jurisdiction on its own motion. *Id.*; *citing dictum in Ziegler v. Champion Mortgage Co.*, 913 F.2d 228, 230 (5th Cir. 1990). Thus, to the extent that a "meretricious removal" is procedural and not one of subject matter jurisdiction, it is defective on its face. That avenue this Court may thus eliminate. Regarding subject matter jurisdiction, that avenue fails on the district court's own assertion, *supra*. How then to address "meritricious?"

> In *Thermtron*, for example, the district court remanded on the ground that the crowded state of its docket would deprive the plaintiffs of a speedy resolution of their claim. The Court refused to accept this pragmatic consideration as a legitimate basis for declining jurisdiction, stating, "*But we are not convinced that Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute.*"

*Allstate*, 8 F.3d 219 at fn. 8 (emphasis added), *citing Thermtron*, 423 U.S. at 351.

## CONCLUSION

11. In examining this scant record, the law of this Circuit, and the congressional statute, it is clear that the district Court had no discretion to remand, and remanded on the basis of an oral *ex-parte* telephone call without giving the removing parties an opportunity to at the very minimum develop a record. The district Court did not remand an ground authorized by statute, and thus had no discretion to enter the order of remand.

## PRAYER FOR RELIEF

12. Accordingly, Petitioners move the Court to issue a Writ of Mandamus commanding the District Court to vacate its order, and restore the case to the docket of United States District Judge Lee H. Rosenthal.

-10-

Respectfully submitted,

_____

PETER J. RIGA
SBOT 16915900
8700 Commerce Park Drive
Houston, Texas 77036-7423
(713) 771-8494
(713) 771-8653 (Fax)
PeterRiga@msn.com
www.RigaLaw.com
COUNSEL FOR PETITIONERS

## CERTIFICATE OF SERVICE

I certify that I delivered a true and correct copy of the foregoing *Petition for Writ of Mandamus* to all parties through their attorney of record, in accordance with the Federal Rule of Appellate Procedure 25 (a) (2) (b) on the 12th Day of October, 2005 as follows:

Mr. Daniel J. Shea (Hand Delivery)
DANIEL J. SHEA, P.C.
1928 West Bell Street
Houston, TX 77019-4814
(713) 942-7500
(713) 942-7507 Facsimile
TRIAL COUNSEL FOR PETITIONER
DAWN JOHNSON WHATLEY

Ms. Susan C. Norman (Hand Delivery)
LAW OFFICES OF SUSAN C. NORMAN
9135 Katy Freeway, Suite 100
Houston, TX 77024-1636
(713) 465–4344
(713) 468-6243 Facsimile
TRIAL COUNSEL FOR CO-PETITIONER
 PERRY LEE WHATLEY

Mr. Roy L. Fuller (U.S. Mails)
1300 Rollingbrook, Suite 608
Baytown, TX 77521-3863
(281) 422-3555
(281) 427-9564 Facsimile
ATTORNEY FOR RESPONDENTS
ROBERT DANIEL WHATLEY
AND JEANIE ANDERSON

Mr. Ray Black, Jr. (U.S. Mails)
LAW OFFICES OF RAY J. BLACK, JR.
One Riverway, Suite 1700
Houston, TX 77056-1997
(713) 840-1955
(713) (713) 840-1820 Facsimile
ATTORNEY *AD LITEM*
PERRY LEE WHATLEY

The Honorable Lynn N. Hughes (U.S. Mails)
United States District Judge
515 Rusk Ave. 11th Floor
Houston, Texas 77002
RESPONDENT

_____

Peter J. Riga

REPORTER'S RECORD

VOLUME 1 OF 1 VOLUME

CAUSE NO. 355,095

IN RE: THE GUARDIANSHIP OF    *   IN THE PROBATE COURT

THE PERSON AND ESTATE OF     *

       *

PERRY LEE WHATLEY,         *   NUMBER TWO (2) OF

       *

AN INCAPACITATED PERSON     *   HARRIS COUNTY, TEXAS

TEMPORARY GUARDIANSHIP OF PERSON & ESTATE

PENDING CONTEST

BE IT REMEMBERED that on the 29th day of

September, 2005, came on to be heard outside the presence of a jury, in the

above-entitled and -numbered cause; and the following proceedings were had before

the Honorable Mike Wood, Judge Presiding, held in Houston, Harris County, Texas;

Proceedings reported by Computerized Stenotype Machine, Reporter's Record

produced by Computer -Assisted Transcription.



RESPONDENT'S
EXHIBIT
D

TINA K. WHITE, CSR-RPR713-755-4343OFFICIAL COURT REPORTER -
PROBATE COURT NO. 2

26

Q. Do you think he's substantially able to provide or manage his own financial affairs?

A. No.

MR. BLACK: That's all I have.

MR. WRIGHT: No questions, Your Honor.

MR. FULLER: Nothing further, Your Honor.

THE COURT: You may step down. Please leave the microphone.

(Witness excused.)

THE COURT: Anything further?

MR. FULLER: I have no further witnesses.

THE COURT: Based on the testimony, I find the necessity exists for the appointment of a temporary guardian pending contest for the person and estate of Perry Lee Whatley. Because there's a contest, I don't believe it's appropriate to name either of the contested parties as guardians. I've asked Jimmie Kelley [sic], an attorney in Harris County to give me --

MR. FULLER: Jimmy Walker.

THE COURT: Jimmy Walker --

You don't want to do it?

-- I've asked Jimmy Walker, an attorney in Harris County, to be guardian of the person and estate. I've heard a number, and I'm not even sure whether I've seen it, two and a half million dollars as the total assets of the estate. There has been a half million dollar annuity that has disappeared, but he's going to take it back if he can and get possession of it. So, that seems like an appropriate amount to bond.

MR. BLACK: I'm quite uncomfortable, Your Honor, going below that for right now until we have a better understanding of where this stuff is.

THE COURT: Don't go below that.

I want to have -- I guess I should disclose ████████████

TINA K. WHITE, CSR-RPR713-755-4343OFFICIAL COURT REPORTER -
PROBATE COURT NO. 2

27

I have had two telephone conferences with the Judge, whose name escapes me, in Boston, the probate Judge.

MR. R. Whatley: Merrill.

THE COURT: Sorry?

MR. R. WHATLEY: Merrill. Judge Merrill was the one who actually ruled.

THE COURT: Okay. I called her one time. She tried to reach me and couldn't before the hearing. I called her after the hearing. She told me what she had done, which was to grant the protective order saying he couldn't leave the hospital pending further order in my Court. And I told her we had a hearing set next Thursday. And on Thursday I called her and said: Well, God didn't want us to have a hearing. And then Marilyn called and said -- at 6:30 in the morning and said: Do you really want to make those people come downtown today?

I called her. She said my order didn't have a time limit. Now, she has now apparently been advised that she has no jurisdiction at all. It has nothing to do with this case at all. But she said that it would be appropriate, she thought, for me to order -- if I order a temporary guardian, that I order the temporary guardian to take possession and custody of Mr. Whatley and bring him back to Harris County. So I would like the order to be prepared to include specific language in that regard. And I think it might be appropriate for his attorney, Mr. Black, to go along on this road trip. I don't think it's appropriate for the guardian ad litem to go along. It's too expensive.

Mr. Walker could possibly have someone else pointed out. We had a hearing on a guardianship in this court one morning, and the guy was not the ward.

The nursing home identified the wrong person. And he's sitting here, and he said: I don't know why I'm here. And two different ad litems, for some reason, had been appointed and said: Judge, that's not Mr. Smith. And so, you know, I think that poor man is going to go back and talk to his family about being taken by some people to the courthouse and being in the courtroom. Perhaps getting kind of confused. Anyway, so

28

let me -- do you have a form of order prepared?

    MR. BLACK: Mr. Fuller did. I looked over it earlier with Mr. Wright. The first two powers do indicate the power to take physical possession, charge and custody of the proposed ward and to relocate him from his current location to Harris County, Texas. That's not an order, just a power. If the Court requires a specific order, we can add it at the end.

    THE COURT: I would at least like an instruction that the temporary guardian -- add a sentence that the temporary guardian should post haste attempt to take physical possession of him and bring him to Harris County.

    MR. BLACK: We can interlineate that, Your Honor.

    THE COURT: I don't want to appoint an appraiser at this point.

    MR. BLACK: Okay.

    THE COURT: For the temporary.

    MR. BLACK: Just scratch it out and leave the language on possession.

    THE COURT: My writing is really crummy. So, I'll let you do that. I think the clearer we are to whoever the Judge is that's seeking control of this case, I don't frankly have any idea how a Federal Court can remove a protective order from the State Probate Court to Federal Court. Maybe the Supreme Court will decide that issue at some point in the future.

    MR. BLACK: In talking to Mr. O'Sullivan up there, it's only -- he's of the same opinion, but he said the only thing perhaps that the Court was going on is because we had these competing jurisdictions; and that the adversity argument, weak as it may be, could be made.

    THE COURT: What is the adversity on?

    MR. BLACK: In now claiming to be a resident of Boston, and then --

    THE COURT: His wife is still claiming to be a resident in Harris County?

    MR. BLACK: I'm not exactly sure what was said, but that was his only

TINA K. WHITE, CSR-RPR713-755-4343OFFICIAL COURT REPORTER - PROBATE COURT NO. 2

29

ground that he could think would establish a reason to remove would be an adversity argument. The others didn't seem to apply.

THE COURT: Mr. Walker, what is your full name?

MR. WALKER: You can just do it -- the bond is under Jimmy.

THE COURT: Okay. Then I'll do it Jimmy.

MR. BLACK: Mr. Walker, proposed that maybe we do a separate order to go get him; or do you want it in this order?

THE COURT: You're going to have to have exemplified copies.

MR. BLACK: Okay.

THE COURT: So, it seems like the fewer orders -- it might leave this poor man with some his money by the time we're through with all this if we hurry.

MR. BLACK: That would be nice.

MR. FULLER: We would like that to be the result.

THE COURT: I put in two and a half million dollars on the bond and put Jimmy Walker's name.

  Interlineate something that the temporary guardianship pending contest is directed to go to find the ward and bring him -- I think the Judge told me she was -- she doesn't have jurisdiction anymore but that she was going to order the sheriff to take him to the airport.

MR. BLACK: Mr. O'Sullivan -- his opinion, at least to me, was that -- from a sense he got from the Federal District Court Judge, that that's probably what they're waiting on, too.

THE COURT: Well, the Federal marshal might be useful to. But I think that -- I think the order ought to clearly say that Mr. Walker has the authority to go up there and take custody. And I think I need to order you to go along so that you have some kind of authority to go along.

So, I think you should both be ordered to

TINA K. WHITE, CSR-RPR713-755-4343OFFICIAL COURT REPORTER - PROBATE COURT NO. 2

33

THE STATE OF TEXAS )

COUNTY OF HARRIS )

    I, TINA K. WHITE, Official Court Reporter in and for Probate
Court No. 2 of Harris County, State of Texas, do hereby certify that the above and
foregoing contains a true and correct transcription of all portions of evidence and other
proceedings requested in writing by counsel for the parties to be included in this
volume of the Reporter's Record, in the above-styled and numbered cause, all of which
occurred in open court or in chambers and were reported by me.

    I further certify that this Reporter's Record of the proceedings truly
and correctly reflects the exhibits, if any, offered by the respective parties

    I further certify that the total cost for the preparation of this
Reporter's Record is $ __365.00__  and was paid by __Susan Norman, Attorney at Law__

    WITNESS MY OFFICIAL HAND this the __6th__ day of
__October__, 2005.


                    Tina K. White, CSR-RPR
                    Official Court Reporter
                    Probate Court No. 2
                    Certificate No. 5488
                    Expires: December 31, 2006
                    1115 Congress
                    Houston, TX 77002

713-755-4343