IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | § | |
| THE MATTER OF | § | NO. 05-CA-11881-PBS |
| PERRY LEE WHATLEY | § | |

### THE WHATLEYS' BRIEF ON FEDERAL JURISDICTION
### AND MOTION FOR LEAVE TO FILE AN ADDITIONAL 1/2 PAGE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Perry Lee Whatley respectfully submits as ordered, his brief in support of the Court's jurisdiction to adjudicate all the claims now presently before it. He move the Court to allow one (1) additional ½ page.

1. This brief addresses the Court's concerns about jurisdiction found in the transcript.

In order to address the issue properly as counsel understands it, Counsel must use a hypothetical to answer the question.

**HYPOTHETICAL**: Jimmy Logan owns a garage in Boston where Mr. Shea takes his Jaguar in for some repairs. Jimmy is also a Boston Police Officer who runs this garage on the side. Shea refuses to pay for the shoddy repairs, and Jimmy impounds the car, files suit in a state Court to validate his lien, and serves Shea. Shea removes the case to Federal Court asserting that since Jimmy is a Massachusetts citizen, and Shea is a Texas citizen, the case sounds under 1332 diversity, since Shea's Jaguar is worth 75,001.00. After the removal, Shea claims that since Jimmy was a Boston Police Officer, a state actor, the counterclaim rests on "separate" 1983 grounds and thus the Court can hear it.

**QUESTION PRESENTED**: Does the Court have subject matter jurisdiction over Shea's counterclaim, even if it remands the removal?

**ANSWER**: No. Since the Federal Court never had jurisdiction over the Original case, Shea's attempts to "piggyback" his way into Federal Court must fail. However, this does not end the inquiry. The Original case must be remanded since it is the value of the repair, not the car that controls the 1332 question. (Amount in controversy) However, Shea can nonetheless bring an Original action in the U.S. District Court against Jimmy, which although and eventually might be determined to be lacking in merit, does not go to the question of the Court's jurisdiction. Thus, the Court would have jurisdiction of the Original action erroneously misnomered as a counterclaim if brought simultaneously with the removal by separate instrument.

In the instant case, because the Whatleys brought the claim simultaneously **by separate instrument** [docket #2], filed separately and apart from the notice of removal, it stands alone, and is cognizable under the statute by using the 1st Circuit's rule that "federal subject matter jurisdiction may be established by a complete reading of a complaint, even though the jurisdiction expressly asserted was improper" (i.e. calling it a counterclaim). *Commonwealth of Massachusetts v. United States Veterans Admin.,* 541 F.2d 119, 122 (1st Cir. 1976). See also *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir. 1980); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1206 (1969). The Whatleys' 1983 claim was not brought later after removal, it was brought simultaneously as a stand-alone suit since it arose from a common nucleus of operating facts. Thus, the Court always had subject matter jurisdiction and nothing in Texas or Massachusetts can divest it.

2.      With apologies to the Court for the confusion, the "counterclaim" that alleges there was a conspiracy in Texas was not the "get-go" counterclaim. It was the First Amended Counterclaim. At the "get-go," the point of removal of concern to the Court, an Original Counterclaim was filed against ETHOS under 1983 as a compulsory counterclaim.[1]

---

[1] The Whatleys agree that it is black letter law that you cannot "yank" a case out of state Court, recast it as a 1983 action and then allege that a Federal Court without jurisdiction over the Original removal would somehow now acquire it. However, by the same token it is also well established by the Supreme Court that once the Court lawfully acquires jurisdiction, no subsequent set of acts can strip the Court of its jurisdiction. Thus, although the word "counterclaim" was used, it should be treated as an Original Petition sounding under section 1983 and provided for by 28 U.S.C. § 1343(a) (3) as the allegations pled make it clear that it is a civil rights action to address a series of abuses by state actors, which requires no exhaustion of other remedies. To answer the Court's time question, the 1983 action was filed simultaneously with the removal, not afterward but would have been brought anyway once the Whatleys realized that Mike Wood and his Texas associates had an agreement with Defendant Chatou-Merrill to extradite the Whatleys without due process of law as confirmed by Wood's words in open Court and his multiple telephone calls which the Whatleys point out, used a telephone that affected interstate commerce.

3.	The Court's question appears to be this, "At the point of removal, does the simultaneous filing of a compulsory counterclaim against ETHOS "lock-in" the ETHOS claim under federal question jurisdiction?" In that regard, it must be noted that the original 1983 claim against ETHOS is indeed compulsory. While a plain reading of the "same case or controversy" language in the supplemental jurisdictional statute [§1337] might indicate an abandonment of the broader "common nucleus" test in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), there is a circuit split on the matter. The First, Third, Fourth, Seventh and D.C. Circuits have held that §1367 ©) codifies the broader *Gibbs* test. *See, Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995)(citations to other circuits omitted). This has implications for the original counterclaim against Ethos and why it had to be filed concurrent with the removal. Since the First Circuit applies the broader-scoped "common nucleus" test, the Whatleys' 1983 counterclaim is much more susceptible of being characterized as "compulsory" rather than "permissive." And that could have proven fatal to the Whatleys.

> The provision in [FED. R. CIV. P. 13(a)] for '[c]ompulsory' counterclaims does not mean that a defendant is compelled to assert the claim and cannot waive it. It means merely that if the claim is one that is within the scope [read: common nucleus] of Rule 13(a) and is not asserted in a counterclaim, its assertion in a later action will be vulnerable to a defense of estoppel.

*Valley Disposal Inc. v. Central Vt. Solid Waste Mgt. Dist.*, 113 F.3d 357, 364 (2nd Cir. 1997).

4.	Since the Whatleys' counterclaim sounds in federal law, . . . "this federal court is obligated to hear it since it is supported by an independent jurisdictional basis." *See Toste Farm Corp. v. Hadbury, Inc.,* 70 F.3d 640, 646 (1st Cir. 1995). While it is true that state Courts can hear 1983 cases and in fact are mandated to do so if called upon, *Howlett v. Rose*, 496 U.S. 356 110 S.Ct. 2430, 496 U.S. 356, 110 L. Ed. 2d 332, (1990), holds that original jurisdiction over a civil rights claim vests in the U.S. District Courts. Indeed, a federal court cannot abstain from or remand a case

that originates in federal law. *Smith v. Texas Children's Hospital,* 84 F.3d 152 (5th Cir. 1996).

5. With respect, then, to abstention, Ethos' admissions sound the Supreme Court's admonition that federal courts are not lightly to relinquish jurisdiction, and that even a difficult issue of state law or parallel pending state litigation is not automatically a warrant to abstain. See Wright, Federal Courts Section(s) 52 (5th ed. 1994)(collecting the pertinent cases). *Pennzoil v. Texaco, Inc.,* 481 U.S. 1, 11 n.9, 107 S. Ct. 1519, 1526 n.9 (1987). Thus, even if Ethos' claims are subsequently dismissed via 12(b)(6) for failure to state a claim (jurisdictional avoidance) or summary judgment based on Ethos' admissions that there was no elder abuse; the Whatleys claims would stand alone, and thus are properly before this Court. *See Scheuer v. Rhodes,* 416 U.S. 232 (1974)(no escaping the constitution or the federal courts). *See also*: *Puerto Rico v. Branstad, Roe v. Sanez, Loving v. Virginia and, Wyatt v. Cole.*

        Respectfully submitted,

        PERRY LEE WHATLEY,

        /s/ Susan C. Norman
        SUSAN C. NORMAN
        Texas Bar No. 15083020
        LAW OFFICE OF SUSAN B. NORMAN
        9135 Katy Fwy., Suite 100
        Houston, TX 77024
        (713) 465-3344
        (713) 468-6243 Telecopier
        *PRO HAC VICE* (PENDING)

-5-

CERTIFICATE OF SERVICE

This is to certify that the above and foregoing *brief* was served pursuant to Fed. R. Civ. P. 5 on the 5TH of October 2005 to the individuals and in the manner indicated below:

| | |
|---|---|
| Mr. James M. O'Sullivan<br>O'Sullivan & Associates, P.C.<br>17 Accord Park Drive, Suite 104<br>Norwell, MA 02061-0000<br>ATTORNEY FOR SOUTHWEST<br>BOSTON SENIOR SERVICES, INC. | ELECTRONIC DELIVERY |

/s/ Susan C. Norman