**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

*IN RE:*                                    §
                                            §
THE MATTER OF                               §                NO. 05-CA-11881-PBS
                                            §
PERRY LEE WHATLEY                           §                JURY TRIAL DEMANDED

**DEFENDANTS' THIRD AMENDED COMPLAINT
WITH RULE 19(a)(1) JOINDER OF PERSONS NEEDED FOR COMPLETE RELIEF
AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

> **THIS AMENDED PETITION ADDS TWO STATE COURT JUDGES: MIKE WOOD AND E. CHOUTEAU-MERRILL. COUNSEL IS WELL AWARE THAT JUDGES ENJOY ABSOLUTE JUDICIAL IMMUNITY FOR ALL ACTS TAKEN AS A JUDGE. HOWEVER, IF THE JUDGE ACTS WITHOUT JURISDICTION, THEN HE/SHE IS STRIPPED OF THAT IMMUNITY AND IS LIABLE IN TORT FOR ALL DAMAGES AND ATTORNEY'S FEES. IN ADDITION, SHOULD A JUDGE POSSESS JURISDICTION, THE JUDGE CAN BE STILL BE SUED FOR INJUNCTIVE RELIEF IF THE CONDUCT VIOLATES THE SUPREMACY CLAUSE OF THE CONSTITUTION OR THE CIVIL RIGHTS OF A CITIZEN. COUNSEL IS MINDFUL OF HIS OBLIGATIONS UNDER FED. R. CIV. P. 11 AND PROCEEDS ACCORDINGLY. NEITHER STATE JUDGE CAN CLAIM JUDICIAL IMMUNITY AS EACH ACTED WITHOUT SUBJECT MATTER JURISDICTION BY THEIR OWN ADMISSION. IN ADDITION, IT WAS RECENTLY DISCOVERED THAT DEFENDANT "JIMMY WALKER" IS NOT JIMMY WALKER BUT HAS MISREPRESENTED HIS TRUE IDENTITY TO THE STATE BAR, THE COURTS, AND STATE POLICE. THUS, PLAINTIFFS UNDER FIRST CIRCUIT PRECEDENT AMEND**

PERRY LEE WHATLEY and DAWN JOHNSON WHATLEY hereby amend their COMPLAINT against SOUTHWEST BOSTON SENIOR SERVICES, INC., and, pursuant to FED. R. CIV. P. 19, also now complain of MICHAEL J. WOOD, E. CHOUTEAU MERRILL, VALERIE MILHOLLAND, JEANIE ANDERSON, ROBERT DANIEL WHATLEY, ROY. L. FULLER, RAY J. BLACK, JR., and **MYLUS JAMES WALKER JR.**, as persons needed for just adjudication of the claims, and would show as follows:

I. JURISDICTION AND VENUE

Original jurisdiction has been properly invoked pursuant to 28 U.S.C. § 1343 (a) (3), 28 U.S.C. § 1443 (1) (2), and 42 U.S.C. § 1983, This COMPLAINT rests on 42 U.S.C. § 1983, and 1988 as its remedies.

Venue is proper in the District of Massachusetts.

II. PARTIES

The Parties to the proceeding are as follows:

PERRY LEE WHATLEY is a citizen of the Commonwealth of Massachusetts DAWN JOHNSON WHATLEY is the spouse of Defendant Perry Lee Whatley. She is a citizen of the Commonwealth of Massachusetts. Defendant SOUTHWEST BOSTON SENIOR SERVICES, INC., "SWBSSI," is a contractor to the Commonwealth of Massachusetts acting under color of state law. MICHAEL J. WOOD is a natural person and private citizen of the State of Texas. He may be served with process at 8714 Hardeman Ct., Houston, Harris County, TX 77064 pursuant to FED. R. CIV. P. 4(e). E. CHOUTEAU-MERRILL is a natural person and private citizen of the Commonwealth of Massachusetts. She may be served with process at Edward W. Brooke Probate and Family Law Center, Boston, MA pursuant to FED. R. CIV. P. 4(e).[1] VALERIE MILHOLLAND is a natural person and private citizen of the State of Texas. She may be served with process at 5727 Rutherglenn, Houston, Harris County, Texas 77096 pursuant to FED. R. CIV. P. 4(e). JEANIE ANDERSON is a natural person and private citizen of the State of Texas. She may be served with process at 2905 Parkland, Baytown, Texas 77521, pursuant to FED. R. CIV. P. 4(e). ROBERT DANIEL WHATLEY is a natural person and private citizen of the State of Texas. He may be served with process at 2711 Alderwood, Austin, Texas 78745, pursuant to FED. R. CIV. P. 4(e).

_____

[1] Judge E. Chouteau Merrill is sued for injunctive relief only at this time.

ROY L. FULLER is a natural person and private citizen of the State of Texas. He may be served with process at 1300 Rollingbrook, Suite 608, Baytown, Texas 77521, pursuant to FED. R. CIV. P. 4(e). RAY J. BLACK, JR. is a natural person and private citizen of the State of Texas. He may be served with process at One Riverway, Suite 1700, Houston, Texas 77056 pursuant to FED. R. CIV. P. 4(e). **MYLUS JAMES WALKER JR.,** is a natural person and private citizen of the State of Texas. He may be served with process at DINKINS, KELLY, LENOX, LAMB & WALKER, L.L.P., 815 Walker, Suite 240, Houston, Texas 77002-5721 pursuant to FED. R. CIV. P. 4(e).

### III.  ANSWER TO ETHOS' CLAIMS

1.      Defendants admit paragraph 1 of the removed petition.

2.      Defendants deny in its entirety paragraph 3 (©) of the removed petition and admit the remainder.

3.      Defendants admit paragraph 4 of the removed petition.

4.      Defendant denies paragraph 5 of the removed petition.

5.      Defendants deny in their entirety paragraphs 6, 7, 8, and 9 of the removed petition.

### IV. CAUSES OF ACTION

6.      PERRY LEE WHATLEY and DAWN JOHNSON WHATLEY, hereinafter "the Whatleys," bring this COMPLAINT against all the named Co-conspirators predicated on conspiracy to violate 42 U.S.C. §1983 and would show the Court as follows:

#### Background Facts

7.      On or about October 11, 2004, PERRY LEE WHATLEY revoked a Durable Power of Attorney he had previously executed in favor of Defendant JEANIE ANDERSON and any named successor. The revocation was filed as provided in TEX. PROB. CODE § 488. The revocation was prompted by Perry Lee Whatley's dissatisfaction at Defendant ANDERSON'S continued ignoring

of his wishes to return his personal financial and estate planning documents to him which she retained in her possession against his express wishes and demand that she return them to him, her refusal to communicate with him regarding his financial resources, and her high-handed attempt to prevent him from returning to his home after a hospital stay.

8.    On January 7, 2005, contemporaneous with his application for a marriage license, PERRY LEE WHATLEY executed a *Statutory Durable Power of Attorney* pursuant to TEX. PROB. CODE § 481 *et seq.*  The Designated Attorney-in-Fact was DAWN JOHNSON, now DAWN JOHNSON WHATLEY, Defendant/Counterclaimant herein.

9.    On January 10, 2005, PERRY LEE WHATLEY married DAWN JOHNSON WHATLEY in a duly authorized religious ceremony by an ordained and licensed Baptist minister.

10.    On March 22, 2005, PERRY LEE WHATLEY executed a *Declaration of Guardian In The Event of Later Incapacity or Need of Guardian* pursuant to TEX. PROB. CODE § 679.  It expressly disqualified Defendants JEANIE ANDERSON and ROBERT DANIEL WHATLEY, among others, from serving as Guardians of either the person or the estate of Perry Lee Whatley.

11.    On April 14, 2005, Defendants ROY L. FULLER, JEANIE ANDERSON and ROBERT DANIEL WHATLEY filed an *Application for Appointment of Guardian of Person and Estate of Perry Lee Whatley.*  The Application is supported by an alleged "opinion" obtained by the FULLER, ANDERSON, and ROBERT DANIEL WHATLEY Defendants, surreptitiously, and in egregious, direct violation of Mr. Whatley's privacy rights and safeguards as defined by HIPAA. Although this "opinion" was full of reservations by Dr. Yulan Y. Jankowski stating that she was unqualified to give the "opinion" she signed, Defendants FULLER, ANDERSON and ROBERT DANIEL WHATLEY used it nevertheless.  The *Application* contained no request for Appointment of a Temporary Guardian.

12.     The Whatleys' review of the "opinion" used by the FULLER, ANDERSON and ROBERT DANIEL WHATLEY Defendants in their *Application* flew in the face of information and medical opinions previously given to the Whatleys by Dr. Jankowski to the effect that 'Mr. Whatley's mental state was *[a] not* seriously affected by blockage in both carotid arteries, although [b] it would eventually get worse without surgery which [c] could not be done because the blockages were inoperable.'   Faced with this conflict in opinions expressed by the same physician, Mrs. Whatley subsequently arranged for Mr. Whatley to be taken to The Methodist Hospital in Houston for evaluation by Dr. George P. Noon, a world-renowned cardio-vascular surgeon.   Dr. Noon evaluated Mr. Whatley and determined the blockages to be severe, yet accessible and operable.

13.     On July 22, 2005, DAWN JOHNSON WHATLEY filed PERRY LEE WHATLEY'S statutory *Designation of Guardian in the Event of Later Need* executed by him on March 22, 2005. She is the guardian designated in that document by PERRY LEE WHATLEY.   JEANIE ANDERSON and ROBERT DANIEL WHATLEY are specifically disqualified.  Significantly, the July 22, 2005 filing informs the Court, the Applicants, and the attorneys that Mr. Whatley was then scheduled for carotid artery surgery.  Mrs. Whatley explicitly declined to offer an opinion on mental capacity, deciding instead to wait for the result of the carotid artery surgeries.

14.     Thereafter, Mr. Whatley himself consented to two operations in which both carotid arteries were cleared and Mr. Whatley now enjoys 100% blood flow to his brain on both sides.  He also consented to a third surgery in which a basal cell carcinoma was removed from his neck by Dr. Joseph Agris who also serves the Whatleys as the overall case manager.  Significantly, since Dr. Agris had also participated in the first carotid repair, he was able to certify Mr. Whatley's ability to travel and has subsequently related information to physicians at Beth Israel Deaconess concerning Mr. Whatley's overall cardiovascular status and his ability to withstand general anesthesia. Dr. Agris

also certified Mr. Whatley to travel to Boston for treatment for diabetes at the Joslin Clinic at Beth Israel Deaconess.

15.     On July 18, 2005, prior to the planned carotid surgery, while Mr. Whatley was under the influence of Vicodin, a strong narcotic pain killer containing codeine, to which he is allergic, Mr. Whatley was evaluated by the I.M.E. assigned by Judge Wood, i.e., Dr. Kunik.  Dr. Kunik was explicitly informed prior to his evaluation of (a) the presence of Vicodin in Mr. Whatley's system at the time Dr. Kunik proposed to conduct his examination and (b) that Mr. Whatley was scheduled for carotid artery surgery on July 22, only four days later.  Nevertheless, even over Mrs. Whatley's request to wait until her husband was not under the influence of Vicodin and in light of the impending surgeries (see par. 13, *supra*), Dr. Kunik chose to go forward with a mental status examination.  As a result Dr. Kunik issued a flawed report that mentioned neither (a) the presence of Vicodin in Mr. Whatley's system during the examination nor (b) the pending carotid surgery.  He did, however, mention that his observation of some senility had its etiology in cardiovascular disease.  On July 28, 2005, after Mr. Whatley's great success from the first carotid artery surgery, Dr. Noon performed surgery on the left carotid artery, again with excellent results.

16.     On August 2, 2005, as Mr. Whatley's mental status continued to improve significantly as a result of the two-sided carotid surgery, Defendants JEANIE ANDERSON and ROBERT DANIEL WHATLEY then supplemented their initial Application for appointment of a guardian of Perry Lee Whatley's person and estate with an Application for Temporary Guardianship based on hearsay allegations of the BLACK Defendant and the afore-stated hearsay report of Dr. Kunick.

17.     Significantly, the August 2 Application for Temporary Guardianship had a proposed typewritten order that appears to propose a hearing date of August 10, 2005.  Nevertheless, the WOOD Defendant interlineated the proposed *Order* and set the Temporary Guardianship hearing

for August 3, 2005, the next day, with *no notice* to the parties of the pendency of the *Application*.

Indeed, the *Application* contains no certificate of service and, as later developments would illustrate,

appears to be a prime example of conspiratorial *ex-parte* communication between the WOOD,

FULLER, and BLACK Defendants.[2]    Also, significantly, the order setting hearing served by the

FULLER Defendant is not a copy of the interlineated order signed by the WOOD defendant.  It is

a completely different, typed document which gives the corrected, interlineated hearing date as set

by the WOOD Defendant, which operates to conceal the fact that the WOOD Defendant set a hearing

a week earlier than he had been asked to do by the FULLER Defendant on behalf of  the

ANDERSON and ROBERT DANIEL WHATLEY Defendants.

18.    With regard to the hearing, counsel fortuitously learned of its setting and Mrs.

Whatley immediately subpoenaed Dr. Kunik.  Subsequently, the BLACK Defendant bragged to Ms.

Norman, private counsel for Mr. Whatley, that KUNIK had contacted WOOD, again, *ex-parte*, upon

receipt of the subpoena, and was instructed by WOOD not to appear.  Indeed, Dr. Kunik did not9.

appear at the August 3, 2005 hearing.

## CONSPIRACY TO VIOLATE CIVIL RIGHTS

19.    In September of 2005, the Whatleys came to the Commonwealth for the stated

purpose of  superior medical treatment.  Unknown to them was that Mike Wood had hired Valerie

Millholland to commence an elder abuse proceeding in Texas, and by using Ethos to improperly

invoke the jurisdiction of the Massachusetts Courts.  As part and parcel to  this charade, Milholland

and Wood docketed and used a 1970 closed file number  to issue orders to have Mr. Whatley taken

into custody.  When the defendants discovered that the Whatleys were in Boston, they turned the task

---

[2]  It is also probative that the interlineated Order signed by the WOOD Defendant, violates
the1993 safeguards the legislature inserted into temporary guardianship proceedings at TEX. PROB.
CODE § 875 (b) through (g),to prevent the very kind of judicial "railroading" evident here.

over to SWBSSI who in turn filed an elder abuse petition. Compounding that fraud, Wood contacted Chouteau-Merrill who in violation of Art VI Sec 2, then overruled the 1st Circuit and the supremacy clause and ordered that Perry Lee Whatley be extradited to Texas. Despite admitting to Wood that she (Merrill) had no jurisdiction, Merrill and Wood contrived to kidnap Whatley until Judge Gorton of this Court stepped in. On September 29th 2005, Wood reiterated his conspiracy with Merrill and both have made it clear that they intend to force the Whatleys out of the Commonwealth despite the constitutional safeguards that neither believe apply to the Whatleys. Again, neither Wood nor Merrill had subject matter jurisdiction over either of the Whatleys. The Whatleys will suffer an irreparable harm for which they have no adequate remedy if the Wood and Merrill are not enjoined. In addition and contrary to Federal Law (28 U.S.C. 1446 (d)), Walker, Wood, Merrill, SWBSSI, Black and Fuller are all operating under a set of invalid orders in that Perry Lee Whatley was never served with notice to appear at the so-called hearing of September 29th 2005 in Texas; the case had been removed, (improper or otherwise) and not remanded until October 5th 2005. Thus, as part of the injunctive relief requested, the Whatleys move that the execution of those orders be enjoined as having been issued in violation of the due process clause as the orders were wholly void as a matter of law. In addition, all the conspirators knew or should have known that this alleged "Jimmy Walker" is actually Defendant, MYLUS JAMES WALKER JR., who by using a false name, executed bonds, brought suits in the Mr. Whatley's name, swore to affidavits using the false name, and had his co-defendant Wood identify him in official Court documents as "Jimmy Walker" an attorney licensed to practice law, when he knew that this was false. The purpose of the phoney names and bond was to avoid liability for his illegal acts while shielding his co-defendants. Ethos knew and had actual notice that all the Orders appointing Walker were fraudulent and at the very minimum Ethos stipulated that they were void before this Court. Yet, Ethos persisted in attempting to

domesticate the fraudulent documents in violation of 18 U.S.C. § 1001.

Relevant Law

20.     Long ago, in 1888, the United States Supreme Court characterized marriage as "the most important relation in life," and as "the foundation of the family and of society, without which there would be neither civilization nor progress."  *Maynard v. Hill,* 125 U.S. 190, 205, 211 (1888). In 1923, the Court recognized that the right "to marry, establish a home and bring up children is a central part of the liberty protected by *the Due Process Clause."  Meyer v. Nebraska,* 262 U.S. 390, 399 (1923)(emphasis added).  The Court, again speaking to the issue stated [that] its past decisions make clear that the right to marry is of fundamental importance.  *See Loving v. Virginia,* 388 U.S. 1 (1967).  The Court's language on the latter point bears repeating, "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.  Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival."  *Id.* at 12, *quoting Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 541 (1942). Although *Loving* arose in the context of racial discrimination, prior and subsequent decisions of the Court confirm that the right to marry is of fundamental importance for all individuals. And  in *Skinner* itself, marriage was described as "fundamental to the very existence and survival of the race." *Id.* at 541.

21.     More recently, in 1967, the Supreme Court, *referring to the Fourteenth Amendment*, stated, "[w]hile this Court has not attempted to define with exactness the liberty thus guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated.  Without doubt, it denotes not merely freedom from bodily restraint but also [for example,] *the right  to marry*, establish a home and bring up children."  *Meyer v. Nebraska,* 262 U.S. 390, 399 (1967)(emphasis added).  Since  1967, the Court has also held that

the right to marry the person of one's choosing is a core fundamental right that the States ought clearly not interfere with.

The Instant Case

22.     *Stare decisis* notwithstanding, the Commonwealth, acting through SWBSSI, has nevertheless interposed itself between a lawfully wedded husband and wife and managed to convince a Massachusetts state court to enjoin a *res* that is outside that Court's jurisdiction and to enjoin Mr. Whatley from receiving vital medical treatment as directed by his physician, Dr. Joseph Agris.  By contrivance, false statements, and using the arm of the State, the Texas niece and nephew have interfered with the most basic fundamental rights of the Whatleys.   In that regard, the Whatleys adopt and incorporate by reference the previously filed *Affidavit of Dr. Joseph Agris*, Mr. Whatley's treating physician, as to why the Whatelys, of their own free will, decided to follow his advice and come to Boston for medical treatment on September 13, 2005.  More importantly, no Texas Court had at the time entered any orders prohibiting Mr. or Mrs. Whatley from traveling or from seeking medical care in another state.   In fact, because of the on-going, in-hospital medical treatment referenced in the affidavit of Dr. Agris, *supra*, Mr. Whatley has *never been served*  with the Texas temporary guardianship application – it being against policy of The Methodist Hospital to let process servers run amok in the DeBakey Heart Institute.

23.     Thus, the foregoing actions of the Defendant constitute a violation of the Civil Rights of the Whatleys by the use of the State Court mechanisms – begun and put in process by Harris County, Texas through its officials, and now extending to the Massachusetts State Officials here.  This constitutionally impermissible conduct deprives both Mr. and Mrs. Whatley due process of law, life, liberty and the freedom to do with their lives as they please for which they now sue SWBSSI for damages in excess of $ 575,000.00 plus their exemplary damages, costs and attorney's fees.

-10-

## V. <u>INJUNCTIVE RELIEF</u>

24.      The Whatelys move the Court to set this matter for a preliminary injunction and the that the following relief pending a trial on the merits be granted:

A.      That all orders entered by the Texas State Court be vacated or enjoined from execution as same were made while the case was removed (The matters  need to be reset if they are still viable);

B.      That all the defendants be enjoined from attempting to remove the Whatleys from the Commonwealth as they are legal residents of Massachusetts and have the right to be here;

C.      That any hearings to determine guardianship be held at a time and place consistent with due process and that the Whatleys be given notice so that they can exercise their remedies, if any.

2.      The Whatleys also request that upon trial of the case, they have permanent injunctive relief.

## VI. <u>REQUEST FOR RELIEF</u>

WHEREFORE PREMISES CONSIDERED, the Whatleys pray that the additional defendants appear and answer herein and that upon trial of this cause the Court enter judgment on these claims and that the Whatleys be awarded their actual damages, court costs, and attorney's fees, as well as a preliminary and permanent injunction forbidding SWBSSI from renewing any petition in the State Courts against them in connection with their residency in Massachusetts and corresponding medical treatment as this Court now has exclusive jurisdiction.

*(signature page follows)*

Respectfully submitted,                          Respectfully submitted,

PERRY LEE WHATLEY,                               DAWN JOHNSON WHATLEY,

By:/s/ <u>Susan C. Norman (ECF) w.perm.</u>      By:/s/ <u>Daniel J. Shea (ECF)</u>
 SUSAN C. NORMAN                             DANIEL J. SHEA
 Texas Bar No. 15083020                      Mass. B.B.O. # 652896
 LAW OFFICE OF SUSAN C. NORMAN               DANIEL J. SHEA, P.C.
 9135 Katy Fwy., Suite 100                   1928 West Bell Street
 Houston, TX 77024                           Houston, TX 77019-4814
 (713) 465-3344                              (713) 942-7500
 (713) 468-6243 Telecopier                   (713) 942-7507 Telecopier

*PRO HAC VICE* (PENDING)

<u>CERTIFICATE OF SERVICE</u>

 This is to certify that the above and foregoing *Third Amended Complaint and Request for Preliminary and Permanent Injunction* was electronically filed and thus served pursuant to the Local Rules and FED. R. CIV. P. 5 on the 24th day of October 2005 to the individuals and in the manner indicated below:

 Mr. James M. O'Sullivan                    ELECTRONIC FILING
 O'SULLIVAN & ASSOCIATES, P.C.
 17 Accord Park Drive, Suite 104
 Norwell, MA 02061-0000
 ATTORNEY FOR SOUTHWEST                      ALL TEXAS PARTIES
 BOSTON SENIOR SERVICES, INC.
 AND ALL THE NAMED PARTIES VIA
 ELECTRONIC TRANSMISSION, FAX,
 OR U.S. MAILS

            /s/ <u>DANIEL J. SHEA</u>

-12-