UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PERRY LEE WHATLEY | ) |
| | ) |
| SOUTHWEST BOSTON SENIOR SERVICES, INC., a/k/a ETHOS, | ) ) ) |
| Plaintiff, | ) CIVIL ACTION NO. 05-11881-PBS ) |
| v. | ) ) |
| PERRY LEE WHATLEY and DAWN JOHNSON WHATLEY, | ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM AND ORDER**

October 25, 2005

Saris, U.S.D.J.

Plaintiff ETHOS filed a petition for an order authorizing protective services for octogenarian Perry Lee Whatley on the ground of alleged elder abuse in the Massachusetts Probate & Family Court. Defendants removed and asserted a counterclaim pursuant to 42 U.S.C. § 1983. After hearing and a review of the briefs, I remand the action for lack of subject matter jurisdiction.

**I.   PROCEDURAL BACKGROUND**

On April 15, 2005, Robert Daniel Whatley and Jeanie Anderson initiated a guardianship proceeding on behalf of their uncle Perry Lee Whatley ("Mr. Whatley") in Texas Probate Court ("Texas

Proceeding"). The Texas Proceeding was removed by Mr. Whatley, but the U.S. District Court for the Southern District of Texas remanded to the Texas Probate Court on the grounds that "Whatley improperly removed this case -- meretriciously claiming defensive civil-rights violations." (Ray J. Black, Jr. Aff. Ex. P ¶ 2.) After twice attempting and failing to have the presiding probate judge recused, Mr. Whatley and his wife, Dawn Johnson Whatley, traveled to Massachusetts.

On September 14, 2005, plaintiff ETHOS filed an emergency petition for an order authorizing protective services in Massachusetts Probate & Family Court ("Massachusetts Proceeding"). The petition represents, pursuant to Mass. Gen. Laws ch. 19A, § 14 et seq., that ETHOS "is a designated protective services agency" and that "Perry Lee Whatley is suffering from abuse, neglect, and financial exploitation." (Def.'s Notice of Removal Ex. A.) Specifically, the petition states that ETHOS has "reasonable cause to believe that":

   (i)    [Mr. Whatley] is the subject of guardianship and
          protective proceedings in Texas;
   (ii)   nonetheless, his wife [Dawn Johnson Whatley] has
          surreptitiously whisked him off to Massachusetts
          to avoid the jurisdiction of the Texas courts;
   (iii)  the doctors at the Beth Israel Hospital report
          that he is unable to manage himself or his
          affairs; and
   (iv)   he has assets of approximately $2.5 million.

(Id.) The petition asks for, inter alia, "the appointment of someone authorized to consent to protective services" and "an order . . . enjoining Dawn Whatley from interfering with the

provision of protective services." On September 16, 2005, defendants Perry Lee Whatley and Dawn Johnson Whatley removed the Massachusetts Proceeding to this Court. The same day, defendants filed their answer to plaintiff's petition in this Court, asserting a 42 U.S.C. § 1983 counterclaim and claiming proper subject matter jurisdiction based on the existence of a federal question, diversity of citizenship, and a civil rights action.

In removing the Massachusetts Proceeding, defendants stated that they "have not and do not ask this [C]ourt to assume general probate jurisdiction or assert control of their property." (Def.'s Resp. to Mot. to Remand ¶ 8.) On September 29, 2005, however, defendants filed an Amended Notice of Removal with respect to the Texas Proceeding. This Court remanded the Texas Proceeding back to the Texas Probate Court on October 6, 2005. After remand, the Texas Probate Court reaffirmed its appointment of a temporary guardian.

On October 12, 2005, defendants amended their section 1983 counterclaim, asserting a conspiracy to violate section 1983. In addition to plaintiff ETHOS, defendants allege that the conspiracy includes Texas Probate Judge Mike Wood, Massachusetts Probate & Family Justice E. Chouteau Merrill, Valerie Millholland, Jeanie Anderson, Robert Daniel Whatley, Roy Fuller, and Ray Black, Jr. (Defs.' First Am. Countercl. 2-4.)

On October 21, 2005, plaintiff moved to amend its petition in the Massachusetts Proceeding. The amended petition makes

similar allegations, adds that the Texas Probate Court appointed a temporary guardian with the authority to consent to protective services for Mr. Whatley in the Texas Proceeding, and asks for orders "enjoining Dawn Whatley from interfering with the provision of protective services" and requiring Dawn Johnson Whatley to account and itemize for Mr. Whatley's assets.  (Pl.'s Mot. for Leave to Amend Pet.; Pl.'s First Amended Pet. ¶ 4.)

Mr. Whatley and his wife say they are now residents of Massachusetts.  He is currently in the Heathwood Nursing and Rehabilitation Center in Chestnut Hill, Massachusetts.  Neither side is claiming inadequate medical care or physical abuse.  The parties are currently under a protective order issued by this Court, which, among other things, preserves Mr. Whatley's assets and ensures that he remains in Massachusetts pending further court order.  There is a dispute over Mr. Whatley's competency.

## II. DISCUSSION

Defendants claim subject matter jurisdiction in the Massachusetts Proceeding based on a federal question, diversity of citizenship, and a civil rights action.  While plaintiff has consented to subject matter jurisdiction, it "is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction."  McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004); Fed. R. Civ. P. 12(h)(3).

A party seeking to remove a case to federal court has the

burden of demonstrating the existence of federal jurisdiction. See, e.g., BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir. 1997). Furthermore, the removal statute should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action. See, e.g., Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).

**A.    Section 1983 Counterclaim**

Defendants argue that this Court has jurisdiction based on the section 1983 counterclaim. This argument fails before it begins. Federal removal "jurisdiction is normally ascertained from the face of the state court complaint that triggered the removal" "as it stood at the time the petition for removal was filed." Id.; Ching v. Mitre Corp., 921 F.2d 11, 13 (1st Cir. 1990) (citation omitted). In this case, defendants did not assert the section 1983 counterclaim in state court. Rather, defendants filed their answer, asserting the counterclaim, in this Court after removing the Massachusetts Proceeding. Therefore, at the time of removal, no section 1983 counterclaim existed to justify this Court's jurisdiction.

Moreover, even if defendants had asserted the section 1983 counterclaim in the Massachusetts Probate & Family Court before removal, they would still fail under either section 1441 or section 1443.

To establish removal jurisdiction based on a federal

question under 28 U.S.C. § 1441(a),[1] federal subject matter jurisdiction must be established within the four corners of the plaintiff's complaint.  See Franchise Tax Bd. v. Const. Laborers Vacation Trust, 463 U.S. 1, 9-11 (1983) ("[A] defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." (footnote omitted)).  As such, section 1441(a) "authorizes removal only by defendants and only on the basis of claims brought against them and not on the basis of counterclaims asserted by them." Ballard's Serv. Ctr., Inc. v. Transue, 865 F.2d 447, 449 (1st Cir. 1989); see also 14B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3722 (3d ed. 1998) ("The federal claim or right that provides the predicate for removal to federal court must not . . . enter the case as a counterclaim asserted by the defendant." (footnote omitted)); 14C C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3731 ("[T]he right of removal is further limited by the basic principle that defendants may remove only on the basis of claims brought against them and not on the basis of counterclaims, cross-claims, or defenses asserted by them." (footnote omitted)).  Plaintiff's petition for protective services under Mass. Gen. Laws ch. 19A, §§ 19, 20 filed in Massachusetts Probate & Family Court presents no federal

---

[1] To be removable pursuant to section 1441(a), a civil action must be "brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).

question.  In addition, the section 1983 counterclaim against plaintiff provides no basis for federal question jurisdiction because it is a counterclaim asserted by defendants, not a claim brought against defendants.

Defendants mention in passing removal jurisdiction based on a civil rights action under 28 U.S.C. § 1443.  To remove under section 1443(1), defendants must assert a "law providing for equal civil rights," which does not include laws such as 42 U.S.C. § 1983 "that confer equal rights in the sense, vital to our way of life, of bestowing them upon all."  28 U.S.C. § 1443(1); Georgia v. Rachel, 384 U.S. 780, 792 (1966); see also Lovely v. Laliberte, 498 F.2d 1261, 1263 (1st Cir. 1974).  Similarly, section 1443(2) "simply does not apply to laws such as the due process clause and 42 U.S.C. § 1983 that work to guarantee rights available to all persons or citizens."  J.O. v. Alton Cmty. Unit Sch. Dist. 11, 909 F.2d 267, 269 n.2 (7th Cir. 1990) (citations omitted).  In addition, "the second subsection of § 1443 confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights."  City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 824 (1966); see also Fosdick v. Dunwoody, 420 F.2d 1140, 1142 (1st Cir. 1970).

In this case, defendants allege section 1983 violations in their right to marry and travel, which provide no basis for civil

rights removal jurisdiction.

Therefore, the section 1983 counterclaim provides no basis for this Court's subject matter jurisdiction.[2]

**B.    Diversity Jurisdiction**

Plaintiff ETHOS is a citizen of Massachusetts.  Defendants were citizens of Texas when the Massachusetts Proceeding began, and both sides agree that the amount in controversy exceeds $75,000.  However, "there are two subject areas, domestic relations and probate, in which the federal courts have refused to adjudicate various disputes even though the requirements for diversity jurisdiction are present."  13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3609 (3d ed. 1998) (footnote omitted).  This Court addresses each in turn.

---

[2] In one last effort to maintain this Court's involvement, defendants' most recent submission contends that their section 1983 action is "erroneously misnomered as a counterclaim" and is instead, "a stand-alone suit."  (Defs.' Brief on Federal Jurisdiction ¶ 1.)  Based on the defendants' own filings and in-court statements describing themselves as "counterclaimants" and their section 1983 action as a "counterclaim," this argument is unavailing.  (See, e.g., Defs.' Answer & Countercl.; TRO Hr'g Tr. 2:12-21, Sept. 21, 2005.)

1.  <u>Probate Exception</u>

The First Circuit has recognized and summarized the probate exception to federal diversity jurisdiction as follows:

> Under the probate exception to diversity jurisdiction, "a federal court may not probate a will, administer an estate, or entertain an action that would interfere with pending probate proceedings in a state court or with a state court's control of property in its custody." <u>Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.</u>, 918 F.2d 1065, 1071 (2d Cir. 1990) (citing <u>Markham v. Allen</u>, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946)).  While "[t]he precise scope of the probate exception has not been clearly established," it is clear that "[a]s a general matter, courts tend to view the probate exception as extending to all suits 'ancillary' to the probate of a will." <u>Georges v. Glick</u>, 856 F.2d 971, 973 (7th Cir. 1988) (citing <u>Dragan v. Miller</u>, 679 F.2d 712, 715 (7th Cir. 1982)).

<u>Mangieri v. Mangieri</u>, 226 F.3d 1, 2-3 (1st Cir. 2000).  Federal courts thus have no subject matter jurisdiction in suits involving "pure" -- probate of a will or administration of an estate -- or "ancillary" probate matters.  While the First Circuit has not explicitly defined what is "ancillary," the Seventh Circuit, which the First Circuit relied upon in <u>Mangieri</u>, has defined the term.

> Thus, as we stated in <u>Dragan</u>, the process of determining whether a state-law action should fall within the probate exception involves the concept of "ancillarity," which itself "is an invitation to apply a concept -- here the concept of probate -- pragmatically."  This means that "labels" should not be a dispositive factor in our analysis.  Rather, in <u>Dragan</u>, we adopted a "practical approach" to determining the boundaries of the probate exception. We directed courts to consider the policy goals

9

>       underlying the exception to determine whether the court
>       had jurisdiction over a particular case -- that is, a
>       suit is considered ancillary to a probate proceeding,
>       and thus within the exception, if "allowing it to be
>       maintained in federal court would impair the policies
>       served by the [exception]."

Storm v. Storm, 328 F.3d 941, 944 (7th Cir. 2003) (citations omitted).  The practical policies served by the probate exception that inform its scope are (1) to encourage legal certainty, (2) to promote judicial economy, (3) to use "relative expertness," and (4) to avoid unnecessary interference with the state system of probate law.  See id. (citation omitted).

   The Supreme Court recently decided to reexamine the scope of the probate exception in Marshall v. Marshall, 392 F.3d 1118 (9th Cir. 2004), petition for cert. filed, 2005 WL 1190437 (U.S. May 17, 2005), cert. granted, 73 U.S.L.W. 3722 (U.S. Sept. 27, 2005) (No. 04-1544).  In Marshall, the Ninth Circuit held that the probate exception (a) applies not only to diversity cases but also to federal question cases and (b) precludes federal subject matter jurisdiction when a question that "would ordinarily be decided by a probate court," such as the invalidation of a trust, constitutes "a necessary step supporting" a federal district court's holding regarding a tort claim.  See Marshall, 392 F.3d at 1126-28, 1132-38.

This case does not involve a "pure" probate matter; none of the parties ask this Court to administer an estate or probate a will.  The question for this Court then is whether the action brought by plaintiff ETHOS is "ancillary" to a probate proceeding, thus depriving this Court of jurisdiction.  While plaintiff filed an amended petition for protective services after removal, this Court examines only "the face of the [petition for protective services] as it stood at the time the petition for removal was filed."  Ching, 921 F.2d at 13.

What makes this question initially difficult is that there is no decedent -- Mr. Whatley, while ailing and likely incompetent, is still very much alive.  Plaintiff has asserted an elder abuse petition under Mass. Gen. Laws ch. 19A, § 14 et seq., asking this Court to find Mr. Whatley in need of protective services and to provide Mr. Whatley with such services, including the "appointment of someone authorized to consent to protective services" and an order "enjoining Dawn Whatley from interfering." Because plaintiff alleges "financial exploitation"[3] (Notice of

---

[3] Mass. Gen. Laws ch. 19A, § 14 defines "financial exploitation" as follows:

> "Financial exploitation", an act or omission by another person, which causes a substantial monetary or property loss to an elderly person, or causes a substantial monetary or property gain to the other person, which gain would otherwise benefit the elderly person but for the act or omission of such other person; provided, however, that such an act or omission shall not be construed as financial exploitation if the elderly

Removal Ex. A ¶ 3), plaintiff's petition, if successful, would remove both Mr. Whatley and his assets from his wife, Dawn Johnson Whatley's control and influence.

To provide the remedy that plaintiff requests, however, would require this Court to assume the powers of the Massachusetts Probate & Family Court. See Markham, 326 U.S. at 494 (prohibiting federal courts from assuming general probate jurisdiction). The elder abuse statute empowers the Massachusetts Probate & Family Court to appoint a guardian, defined as "a person who has qualified as a guardian of an elderly person pursuant to chapter two hundred and one, but shall not include a guardian *ad litem*." See Mass. Gen. Laws ch. 19A, §§ 14, 20 (emphasis added). By contrast, federal courts may appoint only "a guardian ad litem for an infant or incompetent person." Fed. R. Civ. P. 17(c); see also United States v. Maryans, 803 F. Supp. 1378, 1379 (N.D. Ind. 1992) (noting that no cases have found federal courts authorized to appoint general

---

person has knowingly consented to such act or omission unless such consent is a consequence of misrepresentation, undue influence, coercion or threat of force by such other person; and, provided further, that financial exploitation shall not be construed to interfere with or prohibit a bona fide gift by an elderly person or to apply to any act or practice in the conduct of any trade or commerce declared unlawful by section two of chapter ninety-three A.

guardians, as opposed to guardians ad litem, under Fed. R. Civ. P. 17(c)).  As a practical matter, federal courts have little expertise in appointing guardians to handle the financial assets and medical care of older persons.

In addition, plaintiff's elder abuse petition falls within the exception primarily because of the "relative expertness" of the Massachusetts Probate & Family Court over elder abuse petitions.  <u>Storm</u>, 328 F.3d at 944.  The elder abuse provisions vest jurisdiction with the Massachusetts Probate & Family Court and thus allow that court to develop greater familiarity with the factual and legal issues surrounding elder abuse.  Mass. Gen. Laws ch. 19A, § 14; <u>see</u> <u>Storm</u>, 328 F.3d at 947 ("When probate-like matters *are* at issue in a dispute, however, we reiterate that it is significant to our analysis that state courts vested with probate jurisdiction are much more familiar than are federal courts with the factual and legal issues involved.").  Including Mr. Whatley's elder abuse proceeding in the probate exception to this Court's diversity jurisdiction would avoid unnecessary interference with the more experienced state system.  Defendants removed this action after the Massachusetts Probate & Family Court both commenced its elder abuse proceedings and ordered that a guardian ad litem be appointed for Mr. Whatley.

Therefore, plaintiff's elder abuse petition is a suit ancillary to the probate exception, and diversity provides no

13

basis for this Court's subject matter jurisdiction.

   2.   Domestic Relations Exception

In the alternative, this case may also be subject to the domestic relations exception. The Supreme Court affirmed the existence of the domestic relations exception in Ankenbrandt v. Richards, 504 U.S. 689, 693-704 (1992). After discussing the origins, development and expansion of the domestic relations exception, the Supreme Court summarized:

> We conclude, therefore, that the domestic relations exception, as articulated by this Court since Barber, divests the federal courts of power to issue divorce, alimony, and child custody decrees. Given the long passage of time without any expression of congressional dissatisfaction, we have no trouble today reaffirming the validity of the exception as it pertains to divorce and alimony decrees and child custody orders.

Id. at 703 (referencing Barber v. Barber, 21 How. 582, 16 L. Ed. 226 (1858)). Since then, the First Circuit has interpreted Ankenbrandt as narrowly limiting the scope of the exception. Norton v. McOsker, 407 F.3d 501, 505 (1st Cir. 2005) (quoting Dunn v. Cometa, 238 F.3d 38, 41 (1st Cir. 2001). Other Courts of Appeals have agreed. See, e.g., Marran v. Marran, 376 F.3d 143, 155 n.3 (3d Cir. 2004) (noting that the exception is "only applicable in a narrow set of circumstances"); Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 386 n.2 (5th Cir. 2001) (noting that the "exception is a narrow one"); Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 514 (2d Cir.

1973) (noting that the exception "has been rather narrowly confined").

Although the domestic relations exception is narrow, the First Circuit left some room for expansion beyond divorce, alimony, and child custody decrees:

> Despite the breadth of the phrase "domestic relations exception" and the potential reach of the exception's aim, Ankenbrandt made clear that the exception is narrowly limited. In general, lawsuits affecting domestic relations, however substantially, are not within the exception unless the claim at issue is one to obtain, alter or end a divorce, alimony or child custody decree.

Norton, 407 F.3d at 505 (quoting Dunn, 238 F.3d at 41). To this end, the policies discussed in Ankenbrandt by the Supreme Court may inform what, if any, other actions fall within the exception.

> Not only is our conclusion rooted in respect for this long-held understanding, it is also supported by sound policy considerations. Issuance of decrees of this type not infrequently involves retention of jurisdiction by the court and deployment of social workers to monitor compliance. As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees. See Lloyd v. Loeffler, 694 F.2d 489, 492 (7th Cir. 1982).

Ankenbrandt, 504 U.S. at 703 (emphasis added). The First Circuit

added that

> [t]he aim of the exception is to keep federal courts from meddling in a realm that is peculiarly delicate, that is governed by state law and institutions (e.g., family courts), and in which inter-court conflicts in policy or decrees should be kept to an absolute minimum.

Norton, 407 F.3d at 505 (quoting Dunn, 238 F.3d at 41).

In this case, none of the parties has asked this Court to "issue divorce, alimony, [or] child custody decrees." Ankenbrandt, 504 U.S. at 703. Instead, plaintiff ETHOS has essentially asked this Court to find that Mr. Whatley lacks capacity, to appoint a guardian for him to consent to protective services, and to remove Mr. Whatley from the care and influence of his wife. Neither the First Circuit nor any other Court of Appeals has addressed whether the domestic relations exception could be extended to guardianship of an adult because of charges of elder abuse. Determining whether to place custody of an incapacitated elderly person with a guardian instead of a spouse, however, is analogous to determining whether to place custody of a child with a guardian instead of a parent. See Mazur v. Woodson, 932 F. Supp. 144, 149 (E.D. Va. 1996). Moreover, the judicial economy and judicial expertise policies cited by the Supreme Court in Ankenbrandt apply equally in this case. The Massachusetts Probate & Family Court is "more eminently suited to work of this type" because of its "special proficiency developed

16

by state tribunals" and "close association with state and local government organizations dedicated to handling issues that arise out of conflicts over" domestic relations decrees.  See Ankenbrandt, 504 U.S. at 703.  Moreover, extending this exception would, as the First Circuit stated, "keep federal courts from meddling in a realm that is peculiarly delicate, that is governed by state law and institutions (e.g., family courts)."  Norton, 407 F.3d at 505 (quoting Dunn, 238 F.3d at 41).

Therefore, although the parties have consented to jurisdiction, this Court has no subject matter jurisdiction based on diversity and as such, has no removal jurisdiction of the Massachusetts Proceeding.

## ORDER

The motion of plaintiff ETHOS to remand to the Massachusetts Probate & Family Court is **ALLOWED**.  (Docket No. 8.)  By agreement of the parties, the Court's Orders dated October 3, 2005 will remain in effect until further order of the probate court. (Docket No. 22.)

/s/ Patti B. Saris
_____
PATTI B. SARIS
UNITED STATES DISTRICT JUDGE